LARIO, J.T.C.
Plaintiffs, Daniel and Phyllis Goffredo, appealed from deficiencies assessed against them by the Director, Division of Taxation under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1, et seq. (act), for the tax years 1981, 1982 and 1983.
The primary question raised by this appeal is whether plaintiffs, who owned homes in New Jersey and Pennsylvania but were employed and spent the majority of the time for the years *139 in question in Pennsylvania, were New Jersey “resident taxpayers” within the meaning of N.J.S.A. 54A:1-2 for those years.
In their returns for the years 1981 through 1983 the Goffredos reported only their New Jersey source income on the theory they were nonresidents of New Jersey during those years. The Director concluded they were “resident taxpayers” within the meaning of the act and assessed deficiencies related to income emanating from sources outside New Jersey. Additionally, a late filing fee was assessed for plaintiffs’ failure to file their 1981 return until April 2, 1986. When the deficiency assessment was made, plaintiffs were denied a resident credit; however, since then the error has been rectified by the Director.
Under N.J.S.A. 54A:5-5, a nonresident individual’s income subject to tax under the act is only “that part of his income derived from sources within this State”; hence, income derived from sources outside New Jersey are not taxable to a nonresident. N.J.S.A. 54A:1-2 defines residency as follows:
m. “Resident taxpayer” means an individual:
1. Who is domiciled in this State, unless he maintains no permanent place of abode in this State, maintains a permanent place of abode elsewhere, and spends in the aggregate no more than 30 days of the taxable year in this State; or
2. Who is not domiciled in this State but maintains a permanent place of abode in this State and spends in the aggregate more than 183 days of the taxable year in this State, unless such individual is in the Armed Forces of the United States.
n. “Nonresident taxpayer” means a taxpayer who is not a resident.
In levying the instant assessments against plaintiffs, the Director relied upon subparagraph (m)(1) contending that plaintiffs were domiciled in New Jersey during all years here involved and because they failed to meet the requirements of all three of the exceptions contained therein, they fall within the definition of “Resident taxpayer.”
The Director concedes that if the Goffredos were not domiciled in New Jersey in 1981 through 1983 then in that event they are “nonresidents” since he admits they maintained a permanent place of abode in Pennsylvania and did not spend in the aggregate more than 183 days of each taxable year in New *140 Jersey, thereby meeting the exception for nondomiciliaries as contained within subparagraph (m)(2).
The first issue to be determined is whether during 1981, 1982 and 1983 the Goffredos were New Jersey domiciliaries. If so, the next question to be resolved is whether subparagraph (m)(1) of N.J.S.A. 54A:1-2 requires all three exceptions contained therein to be met as contended by the Director. If this contention is concluded in the affirmative, next to be resolved is whether plaintiffs have failed to establish either the first exception of subparagraph (m)(1)—“unless he maintains no permanent plae of abode in this State” or the third exception therein —“and spends in the aggregate no more than 30 days of the taxable year in this State____”
“Domicile” and “residence” are related terms and although in certain contexts are used interchangeably, they are not legally identical. “Domicile” is defined as:
That place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. Smith v. Smith, 206 Pa.Super. 310, 213 A.2d 94 [1965]. The permanent residence of a person or the place to which he intends to return even though he may actually reside elsewhere. A person may have more than one residence but only one domicile. [Black’s Law Dictionary (5 ed. 1979) 435.]
Additionally, “domicile” is compared and distinguished from “residence” by Black as follows:
As “domicile” and "residence” are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one’s domicile. Fuller v. Hofferbert, C.A.Ohio, 204 F. 2d 592, 597 [C.A.6 1953]. “Residence” is not synonymous with “domicile,” though the two terms are closely related; a person may have only one legal domicile at one time, but he may have more than one residence. Fielding v. Casualty Reciprocal Exchange, La.App. 331 So.2d 186, 188 [1976], [Id. at 1176, 1177]
Our Supreme Court further expanded this definition in Lyon v. Glaser, 60 N.J. 259, 288 A.2d 12 (1972) stating:
Domicil[e] is very much a matter of the mind—of intention. One may be acquired, or changed to a new one, when there is a concurrence of certain *141 elements; i.e., an actual and physical taking up of an abode in a particular State, accompanied by an intention to make his home there permanently or at least indefinitely, and to abandon his old domicile], [at 264, 288 A.2d 12]
The determination of one’s domicile is a mixed one of law and fact with the factual elements predominating. Ferrara v. Ibach, 285 F.Supp. 1017, 1019 (D.S.C.1968), and each case must be evaluated and determined by its own facts and circumstances. Cromwell v. Neeld, 15 N.J.Super. 296, 301, 83 A.2d 337 (App.Div.1951); Wolff v. Taxation Div. Director, 9 N.J.Tax 11, 18 (Tax Ct.1986). Therefore, the facts and circumstances surrounding the residences of plaintiffs must first be established and evaluated.
In 1957, as a result of Mr. Goffredo’s change of employment to the South Jersey area, plaintiffs sold their Easton, Pennsylvania, homestead and purchased 104 Main Street, Riverton, New Jersey which they and their family established as their sole residence and domicile. Living with them at that time were their three daughters; Mary Louise, age 12; Phyllis, age 10; and Joan, age 8. All three children attended and eventually were graduated from Riverton Elementary School and Palmyra High School. Subsequent to their respective graduations from high school, each daughter attended and was graduated from Holy Family College, located in Torresdale, Pennsylvania. During their respective college matriculation each commuted daily from the Riverton home.
In 1969 Mr. Goffredo accepted employment as vice-president of technology with Chemcut Corporation, a small company engaged in the manufacturing of equipment for the electronics industry which is located in State College, Pennsylvania. His new position required him to move to the State College area. By reason thereof at that time plaintiffs purchased and moved into premises 1624 Oxford Circle Road, State College, Pennsylvania; however, they retained ownership of their Riverton residence where his children, who were still attending school, continued to reside.
In his new position, Mr. Goffredo became very active in the industry serving as chairman and director in connected technical societies and accepted frequent speaking engagements all of *142 which resulted in extensive business and recreational travel by plaintiffs.
Between 1969 and 1985 plaintiffs continued to own and reside in their State College home. They joined a local church and local civic associations, opened local banking accounts and generally used State College as their primary base of operations.
During these same years, plaintiffs continued to maintain their Riverton home. Their adult children and grandchildren used the house as a residence from time to time and plaintiffs themselves resided there on occasion.
Mary Louise was graduated from college in 1968 and was married shortly thereafter. From 1970 to 1973, Mary Louise, her husband and child, resided in the Riverton home. Daughter Phyllis, was graduated from college in 1971. She had married in 1970 and together with her husband (and a son born in 1974) resided in the Riverton home until sometime in 1974, when, because of a job requirement, they moved to Harrisburg, Pennsylvania for approximately one year. In 1976 they returned to the Riverton home for a short period until they moved into their own home. In 1978 Phyllis and her husband separated, after which, Phyllis together with her son moved back into the Riverton home, where they remained until Phyllis’ remarriage in 1983 at which time she moved from the premises.
Joan, who had been commuting to Holy Family College while residing at the Riverton residence, was graduated in 1972 and shortly thereafter she was married and attended graduate school at Penn State University taking up residence with her parents at State College. She remained there until 1976 when she obtained employment in Palmyra, New Jersey, and moved back to the Riverton residence remaining there until 1980.
Plaintiffs claimed that they maintained their Riverton residence mainly to meet the economic and emotional needs of their adult children and their families and also because they used the Riverton home as a business mailing address during their extensive traveling, which extended for periods of up to three weeks at a time. Their filed federal income tax returns listed their Riverton home as their address and their tax schedules “C” and “E” listed their GOCO chemist-consulting activity and *143 other business activities as based at the Riverton address. They claimed this address was listed so that, in the event they were on an extended trip, when a notice came in from any tax authority requiring an immediate response, it could be taken care of by one of their daughters who was residing in the property. The Director claims that in the years 1981, 1982 and 1983 plaintiffs spent between 40 to 50 days annually at the Riverton home, which is denied by plaintiffs who claim that the time spent by them in New Jersey was only 16 days in 1981, 20 days in 1982 and 21 days in 1983.
During the years plaintiffs resided at State College they continued to maintain a bank account in New Jersey; they retained and renewed their New Jersey driver’s licenses; neither secured a Pennsylvania driver’s license; and, they maintained New Jersey and not Pennsylvania motor vehicle registrations for their automobiles. During this period they owned residences in both states and they paid local property taxes, utilities, maintenance and repairs on both their State College and Riverton homes. Plaintiffs testified that they were partially reimbursed for the Riverton home’s utility costs by the children living there.
Between 1977 and 1985 plaintiffs applied for, and received, New Jersey homestead rebates. It was their belief that since their children lived in the Riverton home during that time period, they were entitled to the rebate and the local township tax official also thought they qualified. Subsequently, after their New Jersey returns were audited, plaintiffs refiled with the homestead rebate section admitting that their principal place of residence for the involved years was in Pennsylvania and they reimbursed New Jersey for the homestead rebates received for the above-stated years.
In 1981 Chemcut was acquired by a company based in West Germany. This acquisition led to the attrition of a majority of the officers and managers of Chemcut. By reason of the conditions at Chemcut resulting from this acquisition, Mr. Goffredo, who was vice president of technology, resigned in July 1985. In August 1985 plaintiffs moved back to the Riverton *144 residence where they have continued to reside to the present time. Plaintiffs testified that they had voted in Pennsylvania (the exact year or years was not given) but that they did not vote there during the years 1981, 1982 and 1983. After their return to New Jersey they registered to vote in New Jersey.
During the time plaintiffs resided in Pennsylvania they paid Pennsylvania state and township income taxes. For the tax years 1982 and 1983, plaintiffs also timely filed New Jersey gross income tax returns and paid taxes based upon New Jersey generated income. In April 1986 plaintiffs filed their New Jersey gross income tax return for the tax year 1981 without including payments. For the years in which plaintiffs filed returns in both Pennsylvania and New Jersey, they did not certify their nonresidence to either state by filing with Mr. Goffredo’s employer a declaration under the reciprocal personal income tax agreement between the two states dated December 20, 1976. See Reciprocal Agreement with Other States, St. Tax Rep. (CCH-NJ) at ¶ 17-445.
After auditing plaintiffs’ 1982 and 1983 New Jersey returns plus examining their 1981-1983 federal and Pennsylvania returns, the Director issued a deficiency tax assessment dated June 18, 1985 covering taxes plus penalties and interest. The assessment was protested by plaintiffs and after an administrative conference it was confirmed by a final determination letter dated October 21, 1985. Plaintiffs then instituted these proceedings. Thereafter, shortly prior to trial, the Director adjusted the assessments by giving effect to plaintiffs’ resident credit thereby revising the deficiency tax assessment as follows:
1981 1982 1983 Total
Tax Deficiency 3,255.61 $ 734.11 $1,230.08 $ 5,219.80
Penalties * (includes late penalty of $3,709.90) 3,872.68* 36.71 61.50 3,970.89
Interest to 10/15/86 (at 9% per annum) 1,337.24 244.13 280.77 1,862.14
Total $8,465.53 $1,014.95 $1,572.35 $11,052.83
*145 The Goffredos admit that from 1957 to 1969 they were domiciled in New Jersey. Their reason for moving to Riverton and the facts submitted relative to their 12-year residency there certainly support that conclusion. A person is domiciled in that place which “he regards as his true and permanent home.” Matter of Jaffe, 74 N.J. 86, 90-91, 376 A.2d 1181 (1977) (cited in Roxbury Tp. v. Heydt, 6 N.J.Tax 73, 77 (Tax Ct.1983)); accord Citizens Bank & Trust Co. v. Glaser, 70 N.J. 72, 81, 357 A.2d 753 (1976). A domicile may be acquired by choice; “its two essentials are (1) physical presence in the state and (2) a concomitant, unqualified intention to remain there indefinitely.” Roxbury Tp. v. Heydt, supra, 6 N.J.Tax at 77 (citing Gosschalk v. Gosschalk, 48 N.J.Super. 566, 573, 138 A.2d 774 (App.Div.), aff’d 28 N.J. 73, 145 A.2d 327 (1958)). Once established, a domicile continues until superceded by a new one. In re Gillmore’s Estate, 101 N.J.Super 77, 87, 243 A.2d 263 (App.Div.1968), certif. den. 52 N.J. 175, 244 A.2d 304 (1968). As was stated in Lyon v. Glaser, 60 N.J. 259, 288 A.2d 12 (1972):
And once established the domicil[e] continues until a new one is found to have been acquired through an application of the same tests, [citations omitted] [A new domicile may be established by an “actual physical taking up of an abode in a particular state, accompanied by an intention to make his home there permanently or at least indefinitely, and to abandon his old domicile.” Id. at 264, 288 A.2d 12] Since the concept of domicilfe] involves the concurrence of physical presence in a particular State, and an intention to make that State one’s home, determination of a disputed issue on the subject requires an evaluation of all the facts and circumstances of the case, [at 264-265, 288 A.2d 12]
In 1969 plaintiffs’ domicile was in New Jersey and “since in the eyes of the law no person is ever without a domicile” a presumption arises that they continued to be domiciled in this State until a new domicile was acquired. Id. at 277, 288 A.2d 12. A domicile, once established, continues “and is not lost until another has been acquired, and the burden of establishing a change of domicilfe] is upon the party who asserts it.” Restatement, Conflict of Laws 2d at 81 (1971). Thus, since plaintiffs claim that after 1969 their domicile was changed to Pennsylvania, the burden to establish that they did in fact do so rests with them.
 A person can have several residences but he can have only one permanent home to which the legal incidents of *146 domicile attach. Trustees of Princeton University v. Trust Co. of N.J., 22 N.J. 587, 595, 127 A.2d 19 (1956). That one is the home which he regards as his true and permanent home. Citizen Bank and Trust Co. v. Glaser, 70 N.J. 72, 81, 357 A.2d 753 (1976). A person may change his domicile, regardless of his motive, so long as the necessary ingredients for establishing a new domicile are present. Lyon v. Glaser, supra, 60 N.J. at 264, 288 A.2d 12.
Plaintiffs’ purchase of, their move to, and their residing in, the State College home for 16 years, where they engaged in business, civic and personal activities are prima facie evidence of a change in domicile. Id. at 277-278, 288 A.2d 12. However, the probative value of this evidence is rebutted and counteracted by the following facts:
Since the salient facts to the inquiry of the domiciliary intent of the Goffredos are almost entirely within their possession, they being interested parties, the court places greater weight upon the objective facts placed in evidence over the alleged intentions as orally stated by plaintiffs in these proceedings. Swain v. Neeld, 28 N.J. 60, 64, 145 A.2d 320 (1958). “[Declarations] of domicile motivated by tax considerations may be carefully scrutinized and readily rejected when negated by the objective circumstances.” Lyons v. Glaser, supra, 60 N.J. at 281, 288 A.2d 12 (Jacobs, J. dissenting). As to the relative weight to be given to various types of evidence produced to establish domicile such as “formal declarations,” “informal declarations” and “acts.” See Restatement, Conflict of Laws 2d, supra, at 82, 83. “Actions speak louder than words, and the courts rely most heavily upon them.” Id. at 82. When a person acquires a second residence and retains his first, his intent to adopt a new domicile must be manifested by objective facts indicating that his desire to remain at the second residence will not expire when his original purpose for acquiring the second residence has terminated. Wolff v. Taxation Div. Director, supra.
Mr. Goffredo testified that his moving to State College was required by his new job. However, in moving to their new *147 residence plaintiffs retained their Riverton residence wherein their three daughters continued to reside. Their daughters, Phyllis and Joan, commuted daily from that residence to college until their graduations in 1971 and 1972 respectively. Presumably, in 1969 these two daughters were not fully emancipated. Plaintiffs continued to pay all real property taxes on the River-ton property and most of the maintenance and utility bills. They retained their New Jersey drivers’ licenses and New Jersey registrations for their automobiles. At no time did they secure Pennsylvania drivers’ licenses. They also retained a bank account in New Jersey.
Plaintiffs listed the Riverton home as their address on their federal income tax returns, and, likewise, on the New Jersey returns filed. From 1977 through 1985 plaintiffs filed with the State of New Jersey homestead rebate applications. Although plaintiffs claim their error was based on the fact their children resided in the home, nevertheless, they certified that their Riverton residence was their, plaintiffs’, main residence which certification they did not retract until after the instant declaration of tax deficiency.
Plaintiffs claimed that in 1981, 1982 and 1983 they spent in New Jersey only 16, 20 and 21 days respectively; however, on “Schedule C” attached to their federal tax returns for each of these years they listed their GOCO chemical consulting business as being located at the Riverton residence and they deducted 50% of the overhead and maintenance of this property as a business expense claiming they used the basement, one-third of the first floor and the garage for office, shop and laboratory. Each of their 1981, 1982 and 1983 federal returns additionally contained a “Schedule E” which listed the purchase in November 1981, and continued ownership in 1982 and 1983, of a nine-unit apartment building at 11 Bank Avenue, Riverton. The listed expenses connected therewith do not list any expenses for commissions, wages or salaries from which it can be inferred that plaintiffs actively managed the building. There was no evidence concerning the time spent in New Jersey relative to the ownership and management of this building. Such intensive use of the Riverton residence for their consult *148 ing business as declared on “Schedule C” plus the time required to manage a nine-unit apartment house appears to contradict occupancy of only 47 days within a three-year period.
Plaintiffs claim that ownership of the Riverton residence was retained for two reasons: (a) For the economic and emotional well-being of the children; and, (b) while residing there the children could receive plaintiffs’ urgent business and tax correspondence during the periods plaintiffs was away on trips. Mary Louise moved from Riverton in 1973; Joan in 1980; and Phyllis (who had returned in 1978) moved out again in 1983. From the evidence submitted by plaintiffs it appears that none of their children resided in the Riverton residence between 1983, the time that Phyllis remarried and moved (the month and the day was not given) until August 1985 when plaintiffs resumed full residence. This residence was not an income producing property. Considering these facts together with plaintiffs’ claim of 50% of its use for business purposes, it is inferred that, certainly during these later years, the Riverton property was retained not only as their domicile, but also, as a permanent place of abode. Additionally, this inference is buttressed by the fact that plaintiffs’ income tax returns, filed for the years during their children’s hiatus from this property, claim the Riverton property as their home address. There appears no logical reason therefor other than that they considered this property to be their principal residence. Additionally, their purchase in 1981 of a nine-unit apartment house located within close proximity to their Riverton home and to be managed by them is evidential of their intent to continue their domicile in New Jersey.
Upon Mr. Goffredo’s resignation from Chemcut in 1985, he immediately returned to New Jersey for permanent residence. He also admitted stating to a representative of the Division of Taxation that upon his retirement it was his intention to return to live in New Jersey.
As previously determined, plaintiffs established a New Jersey domicile in 1958 when they took up residence at 104 Main *149 Street, Riverton, New Jersey. In 1969 plaintiffs established a residence at 1624 Oxford Circle Road, State College, Pennsylvania. Between 1969 and 1985 plaintiffs owned and maintained a permanent place of abode in State College, Pennsylvania and at the same time they also maintained the Riverton house as a permanent place of abode.
The court finds from the objective facts placed in evidence that in 1969, when plaintiffs secured their Pennsylvania place of abode, they did not intend to make State College their home indefinitely and to abandon their Riverton domicile; therefore, a change in domicile did not occur. Accordingly, it is concluded that for the tax years 1981, 1982 and 1983 plaintiffs remained domiciled in New Jersey.
Since plaintiffs as New Jersey domiciliaries maintained a permanent place of abode elsewhere (in Pennsylvania) the next issue to be determined is whether in order to be excluded from being declared a New Jersey resident taxpayer subsection (m)(1) requires plaintiffs to establish all three of the exceptions contained therein. This court concludes in the affirmative. The word “and,” as used in the statute should be construed as having its normal conjunctive not disjunctive meaning as when the word “or” is used. Cf. State v. Greene, 33 N.J.Super. 497, 502, 111 A.2d 65 (App.Div.1955) (the word “and” carries with it natural conjunctive import) (cited in State v. Duva, 192 N.J.Super. 418, 421, 470 A.2d 53 (Law Div.1983)). By use of the word “and” it is clear that the Legislature intended all three of the exceptions to exist before someone domiciled in this State is exempted as a nonresident taxpayer. By reason of the fact that plaintiffs did maintain a permanent place of abode in New Jersey, it is not necessary to determine if they spent, in the aggregate, more than 30 days in New Jersey. It is concluded that, since plaintiffs were domiciled in New Jersey from 1958 to the present, and maintained a permanent place of abode in New Jersey during the tax years in issue, plaintiffs are New Jersey resident taxpayers within the meaning of N.J.S.A. 54A:1-2(m)(1).
*150 The next issue to be addressed is the abatement of penalties and interest. Defendant urges first that since the Goffredos allegedly failed to expressly seek this relief from the Director, and secondly, that since plaintiffs failed to present any evidence to the Director explaining their failure to pay the taxes when due, the penalties must stand.
Initially this court finds defendant’s alleged factual basis to be incorrect—the relief specifically requested in plaintiffs’ complaint is “that the said assessment be set aside or reduced together with such other relief as may be appropriate.” The assessment referred to is the total deficiency, to wit: the original tax deficiency plus interest and penalties itemized in the Director’s final deficiency letter of October 21, 1985, a copy of. which was attached to the complaint.
The deficiency letter also contained the following: “The penalty is being abated on the condition you are in agreement with the deficiency and that prompt payment is made.” By immediately instituting this appeal plaintiffs obviously were not in agreement with the total deficiency set forth therein. Subsequent to the filing of the complaint and shortly before trial defendant admitted that his calculations of the taxes due were incorrect because he failed to deduct plaintiffs’ resident credit. Upon reexamination the tax was adjusted and the deficiency recalculated which necessarily required recalculation of the penalties. Inasmuch as the original assessment was admittedly incorrect, plaintiffs were justified in not agreeing to accept the conditions offered them to avoid penalty.
Since, on appeal, this court has the jurisdiction to review the Director’s decision not to waive penalty and interest, Media Graphics, Inc. v. Tax. Div. Director, 7 N.J.Tax 23, 33 (Tax Ct.1984), aff’d 8 N.J.Tax 321 (App.Div.1986), it logically follows that this court certainly may review a conditional waiver of penalty. Additionally, even if the figures contained in the Director's original deficiency letter were correct, this court finds disturbing the Division’s bases for its conditional abatement of penalty. The decision whether to abate a penalty is to *151 be applied to the peculiar facts of each case. It is not a tool to be used to discourage honest disagreement and appeals.
N.J.S.A. 54A:9-6(b) provides:
Deficiency due to negligence. If any part of a deficiency is due to negligence or intentional disregard of this act or rules or regulations hereunder (but without intent to defraud), there shall be added to the tax an amount equal to 5% of the deficiency. [Emphasis supplied]
With respect to late filing N.J.S.A. 54A:9-6(a) directs in a case of failure to file a tax return when due, the penalties of the State Tax Uniform Procedure Law (N.J.S.A. 54:48-1 et seq.) are to be added “unless it is shown that such failure is due to reasonable cause and not due to willful neglect____”
Although this court has found that plaintiffs’ domicile for the years in question was in New Jersey where they also maintained a permanent place of abode, their primary place of residence for 16 years was in Pennsylvania. This court additionally finds that plaintiffs firmly and genuinely believed they were not New Jersey residents for New Jersey income tax purposes during that period. Although this court has determined that their belief was not in accordance with New Jersey law, under the facts of this case their conclusion was not unreasonable. They obviously were of the incorrect legal opinion that they could have had but one place of abode and for the years in question they considered that place to be their principal residence in Pennsylvania.
The court specifically finds that plaintiffs’ failure to file New Jersey resident returns was not due to negligence nor to an intentional disregard of the New Jersey Gross Income Tax Act or rules or regulations thereunder. It further finds that plaintiffs’ failure to file when due their 1981 income tax return was due to reasonable cause and not willful neglect.
The Director’s deficiency assessment for New Jersey gross income tax as amended is affirmed; his assessment of penalty is vacated and his assessment of interest is modified to reflect only the minimum statutory rate.