MENYUK, J.T.C.
This matter comes before the court on cross-motions for summary judgment. The issue is whether plaintiff Tozour Energy Systems, Inc. is required to pay sales or use tax on the purchase of parts it uses in performing work for New Jersey customers under service contracts. The service contracts cover parts and labor and plaintiff collects sales tax from its New Jersey customers on the full price of the contract at the time that the contracts are sold. Plaintiff contends that, because it collects sales tax on the service contracts, the parts would effectively be taxed twice if plaintiff were forced to pay sales or use tax on the parts. Secondarily, plaintiff asserts that, even if it is liable for the tax, the penalty and interest assessed against it should be abated.
Defendant Director, Division of Taxation (“Director”), argues that under the pertinent regulations, plaintiff was not selling the parts to its customers but was using them in fulfilling its obligations under the service contracts; therefore, plaintiff was obliged to pay tax on its purchase or use of the parts. The Director also maintains that the decision whether to abate interest *344 and penalty rests in the sound discretion of the Director, and should not be overturned by this court. For the following reasons, the court affirms the Director’s assessment in full.
The contested assessment in the amount of $15,306.43 plus interest and penalties for the period July 1,1998 through June 30, 2002 (the “audit period”) was sustained by the Division of Taxation (“Division”) in a final determination issued on July 13, 2004. Of that amount, $453 was attributable to non-contract work, which was uncontested and has been paid. On August 11, 2004, plaintiff paid the remaining contested assessment of $22,670.18 (which amount included tax, interest, and penalties) in full, and filed its appeal with the Tax Court seeking a refund of that amount.
The parties filed a joint stipulation of facts and thereafter filed cross-motions for summary judgment. Both parties’ motions were originally denied without prejudice in a bench opinion. The parties submitted a supplemental joint stipulation of facts and both parties renewed their summary judgment motions.
The facts are as follows. Plaintiff performs maintenance and repair work on commercial heating and cooling systems in New Jersey. It sells service contracts under which it agrees to perform all necessary maintenance and repairs on its customers’ heating and cooling systems. These contracts are sold by plaintiff solely as service contracts and not as part of a package price for the purchase and installation of a heating and cooling system. In addition to the work performed under the contracts, plaintiff also performs repair and maintenance services for customers that do not have service contracts or under other maintenance programs with terms different from those of the contracts at issue here. Tax on parts used by plaintiff in its non-contract work or work performed under other maintenance programs is not in dispute. In performing work under the service contracts, plaintiff uses parts taken from its inventory.[1] The stipulations of facts do not indicate where plaintiff kept its inventory during the audit period. *345 At oral argument and in certain correspondence between the plaintiff and the Division, it was indicated that plaintiff maintains its parts inventory in Pennsylvania. Plaintiff does not assert, nor does it present any proof, that it has paid sales or use tax on the parts to Pennsylvania or any other jurisdiction.
Each service contract sold by plaintiff covers all parts and labor and is individually priced. The price of any particular contract is determined using a three-step methodology. First, plaintiff consults a computer program supplied by the manufacturer of the heating and cooling systems maintained by plaintiff. The program uses the age and type of the customer’s equipment to produce an estimate of future maintenance costs, including labor and replacement parts. Second, plaintiff cuts this estimate by fifty percent because plaintiff believes the manufacturer is overly pessimistic in its calculations. Finally, plaintiff adds a markup of thirty to thirty-four percent to the estimate from step two in order to recognize a profit. The price charged to a customer for a service contract includes parts and labor, but does not separately state the two components, and no proof was presented as to what proportion of the price of the service contracts represents the projected cost of parts needed to perform the contracts. When a customer purchases a service contract, plaintiff charges, collects and remits sales tax to the Division on the full price of the contract.
The cross-motions are made pursuant to II. 4:46-2, which provides that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). “By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a ‘genuine issue as to any material fact challenged.’ ” Brill v. Guardian Life Inn. Co. of America, 142 N.J. 520, 529, 666 A.2d 146 (1995). In this case, the parties have stipulated to certain facts, and the parties have advised the court that they do *346 not believe there are any facts which would be further developed if this matter were to proceed to trial. In this case, there are no genuine issues of material fact in dispute, and the matter may be decided on the facts before the court.
The New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 to - 29 (the “Act”), imposes a tax on the receipts from the retail sales of all tangible personal property not otherwise exempt. N.J.S.A. 54:32B-3(a). The Act also provides for a compensating use tax which is imposed on the use of any tangible personal property in this state purchased at retail unless the property has already been or will be subject to New Jersey sales tax. N.J.S.A. 54:32B-6; Cosmair, Inc. v. Director, Div. of Taxation, 109 N.J. 562, 566, 538 A.2d 788 (1988). The Act also imposes a sales tax on certain enumerated services. The parties do not dispute that the services provided by plaintiff in performing its obligations under the service contracts are subject to sales tax. See N.J.S.A. 54:32B-3(b)(4) (imposing a sales tax on the service of repairing or maintaining real property). The Director does not contend that any further tax is due on the services performed by plaintiff under the service contracts.
The dispute here arises from the fact that a component of the price charged by plaintiff on a service contract is the projected price of the parts that plaintiff anticipates it will use in fulfillment of the service contract. Plaintiff argues that it would constitute double taxation if tax is imposed on plaintiffs use of the parts in New Jersey when it performs its repair and maintenance services in addition to its customers’ payment of the sales tax at the time the service contract is purchased. Because it charges its customers tax on the service contracts, plaintiff contends that it is not liable for use tax on the parts.
Strictly spealdng, what plaintiff describes is not double taxation, which occurs when the same taxpayer pays a tax more than once on the same item, but a pyramiding of taxes, where a tax is paid on the same item more than once as it moves through the chain of sales to the end user.
“[T]he general legislative intent was to impose the tax on sales of tangible personal property unless that property was to be resold by the purchaser. The contempla *347 tion was that the tax in such a situation would be incurred on resale. The theoretical justification for the resale exemption was ‘the desire to avoid pyramiding taxes as goods move along the channels of distribution toward the marketplace.’ ”
[Metpath, Inc. v. Director, Div. of Taxation, 96 N.J. 147,151, 474 A.2d 1065 (1984) (citation omitted)].
Although plaintiffs customers have paid tax on the price of service contracts, plaintiff itself has not previously paid a tax on the parts and the Director’s assessment would not result in plaintiff being subjected to tax twice. The real issue is whether plaintiffs use of the parts in fulfilling its service contracts was taxable.
N.J.S.A. 54:32B-3(a) imposes a tax on receipts from all retail sales of tangible personal property, unless specifically excepted from tax in the Act. If sales tax on the receipts from a retail sale has not or will not be paid, the use within this state of tangible personal property purchased at retail is subject to the use tax. N.J.S.A. 54:32B-6. Therefore, whether plaintiffs purchase or use of the parts is taxable depends on whether plaintiffs purchases of the parts constituted “retail sales.” During all periods relevant here, the term “retail sale” was defined by N.J.S.A. 54:32B-2(e), in relevant part,[2] as:
(1) A sale of tangible personal properly to any person for any purpose, other than (A) for resale either as such or as converted into or as a component part of a product produced for sale by the purchaser, ... or (B) for use by that person in performing the services subject to tax under subsection (b) of section 3 where the property so sold becomes a physical component part of the property upon which the services are performed or where the property so sold is later actually transferred to tho purchaser of the service in conjunction with the performance of the service subject to tax.
(2) For the purposes of this act, the term retail sales includes: sales of tangible personal properly to all contractors, subcontractors, or repairmen of materials and supplies for use by them in erecting structures for others, or building on, or otherwise improving, altering, or repairing real property of others.
At first glance, the two subparagraphs appear to be contradictory. Plaintiff construes N.J.S.A. 54:32B-2(e)(1)(B) to mean that its purchase of parts would not be subject to tax because the parts are used by the plaintiff in performing the services subject to tax *348 under subsection (b)(4) of section 3, and the parts purchased by plaintiff become a physical component part of its customers’ heating and/or cooling systems in conjunction with the performance of the service of maintaining or repairing those systems. Read in that way, plaintiffs purchase of parts would be exempt from sales tax as a sale for resale under N.J.S.A. 54:32B-2(e)(1)(B). However, the second paragraph of the same provision, N.J.S.A. 54:32B-2(e)(2), plainly provides that the term “retail sale” includes the parts and materials purchased by a “contractor” or “repairman,” for its own use in altering or repairing its customers’ real property.
As authorized by N.J.S.A. 54:32B-24(1), the Director has promulgated regulations dealing with the building and construction trades, including contractors, which are set forth at N.J.A.C. 18:24-5.1 to -5.19. The term “contractor” is defined by N.J.A.C. 18:24-5.2 as “any individual, partnership, corporation or other commercial entity engaged in any business involving erecting structures for others, or building, or otherwise improving, altering, or repairing real property of others” (emphasis added). Plaintiff does not dispute that the commercial heating and cooling systems it services are real property. Plaintiff is, therefore, a contractor as defined by N.J.A.C. 18:24-5.2. The regulations distinguish between the parts and materials used by the contractor in performing taxable services, for which the contractor is liable, and the taxable services provided by the contractor to the customer, which are taxable to the customer. The tax treatment of the purchases of materials and supplies by contractors is succinctly stated in N.J.A.C. 18:24-5.3:
(a) For the purposes of sales and use taxes, sales of materials and supplies to contractors for use by them in erecting structures for others, or building on, or otherwise improving, altering or repairing real property of others are deemed to be retail sales.
(b) Except as hereinafter provided, contractors purchasing materials and supplies must pay the sales tax at the time of purchase.
During the audit period, N.J.A.C. 18:24-5.8 provided:
(a) Services rendered by a contractor in maintaining, servicing or repairing real property, except as herein provided, are subject to tax. When charging the tax on maintaining, servicing and repairing real property, a contractor must charge the sales tax on only that portion of his bill attributable to services. The tax on *349 materials used in performance of such services is the responsibility of the contractor.
(c) In all instances, sales or use taxes on materials used in maintaining, servicing, or repairing real property where such materials are provided by the contractor as part of his services, are the responsibility of the contractor. The contractor should charge tax only on the service portion of his bill.[3]
The following principles of statutory interpretation are applicable here. “The paramount goal of all statutory construction is to give effect to the Legislature’s intention.” Cosmair, supra, 109 N.J. at 570, 538 A.2d 788. A court must first consider the plain language of the statute, which is to be given its ordinary meaning, as long as that meaning is consistent with the legislative intent. Koch v. Director, Div. of Taxation, 157 N.J. 1, 7, 722 A.2d 918 (1999). If a statute can be interpreted more than one way, it should be interpreted in light of the Legislature’s general intention, “in an integrated way without undue emphasis on any particular word or phrase and, if possible, in a manner which harmonizes all of its parts so as to do justice to its overall meaning.” Ibid, (citations omitted).
Moreover, New Jersey courts generally defer to the statutory interpretation of the agency charged with enforcing it. Id. at 8, 722 A.2d 918. The Director’s interpretation of a tax statute will prevail “as long as it is not plainly unreasonable.” Ibid, (quoting Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). Although the Director “cannot extend a statute beyond its language to expand its effect,” Cosmair, supra, 109 N.J. at 570, 538 A.2d 788, citing Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528, 197 A.2d 673 (1964), *350 the Act plainly provides that all receipts from the retail sales of tangible personal property are presumptively subject to tax until the contrary is established, and the taxpayer has the burden of establishing otherwise. N.J.S.A. 54:32B-12(b); Campo Jersey, Inc. v. Director, Div. of Taxation, 22 N.J.Tax 251, 270 (2005), aff'd 390 N.J.Super. 366, 915 A.2d 600 (App.Div.2007); Adamar of New Jersey v. Director, Div. of Taxation, 17 N.J.Tax 80, 86 (1997), aff'd 18 N.J.Tax 70 (App.Div.1999) (Sales and Use Tax Act is intended to be broadly inclusive and any doubt as to taxability should be resolved in favor of the Director).
I conclude that the regulations promulgated by the Director are consistent with the legislative design, which distinguishes between property purchased for use in performing services on tangible personal property, and property purchased for use in performing services on real property. N.J.S.A. 54:32B-2(e)(1)(B), quoted above, treats purchases of property used in performing those services enumerated in N.J.S.A. 54:32B-3(b) that are not services performed on real property as sales for resale, where tax is collected from the purchaser of the service, who is regarded as the end user of the tangible personal property. N.J.S.A. 54:32B-2(e)(2) refers to the services of improving, altering or repairing real property of others, and provides that sales to contractors are outside the sale for resale exemption from sales tax. The contractors are regarded as the end users of the materials used in performing their services, and sales to them are deemed not to be for the purpose of resale to the contractors’ customers. See Polaris Corp. v. Director, Div. of Taxation, 12 N.J.Tax 70, 72 (1991) (upholding a use tax on raw materials used by the taxpayer to fabricate and install roofs).
Upon further examination of the provisions of the Act, the reason that both the statute and the regulations require a contractor to pay tax on the purchase of materials used in repairing, maintaining or improving real property becomes clearer. In many cases, the services of contractors are not taxable. For example, work resulting in a capital improvement to real property, such as the construction of a house, is not subject to tax. N.J.S.A. 54:32B-3(b)(4). The services of maintaining, servicing, and repair *351 ing residential heating systems are not taxable. Ibid. The materials used in performing taxable services to real property are frequently the same materials used in performing the exempt services, and the tax on materials used in performing those services could, therefore, be readily evaded if materials were purchased by the contractor tax free and were claimed to be used in performing an exempt service. Consequently, the contractor’s vendor is generally required to collect the sales tax on materials from the contractor, unless the contractor has applied for and has been granted a permit to pay the tax directly. Stephen Little Trucking v. Director, Div. of Taxation, 19 N.J.Tax 461, 467 (2001) (explaining the relationship among N.J.S.A 54:32B-2(e)(2), -2(w) and -12(b)). If, however, sales tax is not collected by the vendor, such as when a contractor brings in materials from out-of-state, those materials would escape taxation entirely unless the use tax is imposed on the contractor by deeming the contractor to be the user of the parts and materials used in performing both taxable and nontaxable services on real property. Further, imposing the tax on the contractor does not result in pyramiding or double taxation, because no tax on the tangible personal property used in performing the seivice of maintaining, repairing or improving real property is imposed on the purchaser of the seivice. The statute and the regulations impose either the sales tax or the use tax a single time — on the purchase or use by the contractor.
The Director has published various bulletins to provide tax guidance to taxpayers. The Division’s “Tax Topic: Contractors and New Jersey Taxes,” (also called “Bulletin S&U-3”)[4] “explains the rules that apply to contractors for paying sales or use tax to suppliers and collecting sales tax from property owners.” Bulletin S&U-3 at 1. The guidance supplied by Bulletin S&U-3 is consistent with the Director’s regulations, namely, that a contractor must pay the tax on its purchase of materials used in performing *352 work on the real property of others. The Director’s interpretation of the statutory provisions is explained in the following terms:
It is the general rule that the sale to the actual consumer is a “retail sale.” All retail sales of tangible personal property, unless specifically exempt under the New Jersey Sales and Use Tax Act, are taxable. Therefore, the actual consumer pays the sales tax on the tangible personal property at the time of purchase.
For New Jersey sales tax purposes, a contractor is considered the actual consumer of the materials and supplies used in construction or in improving, altering, or repairing the real property of others. Sales of materials and supplies to contractors are considered “retail sales” and, therefore, taxable.
[Bulletin S&U-3 at 3.]
Plaintiff contends that the foregoing advice is inapplicable to its situation, because it has already collected sales tax from its customer. The bulletin further states, however: “The contractor does not charge the customer sales tax on the cost of materials and supplies used for the job. The sales tax on materials is paid by the contractor at the time of purchase.” S&U-3 at 6.
If the contractor chooses to separately itemize materials and labor on the customer’s bill and the bill is for a taxable repair or maintenance service, the only amount deductible from the receipt for sales tax purposes is the separately stated pass-through of the actual cost of materials. The cost of materials may include the sales tax paid by the contractor when the materials and supplies were purchased. The remainder of the customer’s bill is for labor and is subject to sales tax. If the contractor does not itemize the materials and the labor for a taxable job, the entire receipt is subject to tax.
[Ibid. (emphasis added).]
Plaintiff contends that the Division’s Bulletin S&U-9 (3/98),[5] entitled “Business Purchases,” supports its position because it directs that tax be collected on the cost of a maintenance contract at the time of purchase and further provides that there is no tax due for parts or labor for a repair performed under the service contract. Bulletin S&U-9 “explains when a business owner is required to pay sales tax on a purchase ... and indicates when use tax may be due.” The portion of S&U-9 relied on by plaintiff appears under the heading “Tangible Personal Property,” and states:
*353 You are required to pay sales tax on all charges for maintaining servicing or repairing tangible personal properly.
A maintenance contract (for computer hardware, electronics equipment, etc.) is considered to be a prepayment for taxable seivices to tangible personal properly, and is subject to sales tax.
Example
EnvironCo has a service technician come to their office to fix a broken computer; charges, if any, incurred for parts and labor are subject to sales tax. However, if the computer was covered by a maintenance contract, there would be no tax on the parts or labor for a qualified repair since the tax was paid upon the purchase of the agreement.
[Emphasis added].
The portion relied upon by plaintiff clearly is limited to service contracts on tangible personal property. Bulletin S&U-9 also provides advice on maintenance and repair seivices to real property. It states that the purchaser of such seivices is required to pay tax on the charge for the service. It is silent as to tax on parts and materials used in performing the seiviee and refers the reader to Bulletin S&U-2, entitled “Sales Tax and Home Improvements,” [6] and to S&U-3, discussed above.
Finally, the Division of Taxation publishes a bulletin, ANJ-8 (7/95),[7] discussing sales tax issues implicated in the performance of services related to air conditioning, heating, and refrigeration. It states:
Contractors are required to pay sales tax on all purchases of materials and supplies, including air conditioning, heating and refrigeration units. When materials are purchased in New Jersey, the contractor is required to pay the tax to the supplier. When materials are purchased in another state and brought into New Jersey for use in New Jersey, the contractor is required to pay use tax based on the cost of the materials.
[Bulletin ANJ-8 (7/95) at 1].
Plaintiff’s argument, reduced to its simplest terms, is that tax should not be paid twice on the same tangible personal property. *354 It is true that it is the design of the statute not to subject the same property to tax twice. Metpath, Inc., supra, 96 N.J. at 151, 474 A.2d 1065. Merely because Tozour has collected tax from its customers does not mean that the statute or the regulation subjects the same property to tax twice. The statute, the regulations and the Division’s bulletins make clear that only the contractor is subject to tax on the materials used in repairing and maintaining real property and that tax should not be collected from the customer. The Director’s regulations also plainly state that a contractor is only required to collect tax on the charge for the service of repairing and maintaining real property, and that the service charge should be stated separately from the cost of the materials used to perform the service. N.J.AC. 18:24-5.8(e).
Plaintiff failed to separate the portion of the charges for its service contracts attributable to parts and the portion attributable to labor. I recognize that, in all probability, plaintiff is not able to separately state the cost of parts and the cost of labor, although the manufacturer that supplies the computer program used by plaintiff in pricing its contracts presumably would be able to supply the parameters used by the program in performing its calculations. It is precisely the difficulty in separating the price of the service contract into components for labor and parts that results in the advice contained in Bulletin S&U-3, which states that if a contractor does not itemize the materials and labor for a taxable job, the entire receipt is subject to tax. Bulletin S&U-3 at 6. As noted above, in order to properly administer the tax and to prevent evasion of the tax, the Act presumes that receipts for property mentioned in N.J.S.A. 54:32B-3(a) are taxable, and the burden is on the person required to collect the tax or the customer to prove otherwise. N.J.S.A. 54:32B-12(b). No proof was presented as to the amount of tax collected on the service contracts attributable to parts, and in any event, it is plaintiffs customers and not plaintiff that would be entitled to any overpayment of tax on the service contracts. N.J.S.A. 54:32B-20(a). If there was any unfairness here, it was in plaintiffs collection of tax on the parts from its customers and not the Division’s assessment of plaintiff.
*355 In transactions that present difficulties in allocating taxable from nontaxable components of a single price, taxpayers can seek to enter into a closing agreement with the Director whereby the parties can agree in advance how tax will be paid. N.J.S.A. 54:53-1 to -6. See, e.g. Boardwalk Regency Corp. v. Director, Div. of Taxation, 18 N.J.Tax 328 (App.Div.1999), (describing a closing agreement entered into by the Director pursuant to N.J.S.A. 54:53-1, that was intended to resolve the taxation of certain nonalcoholic beverages purchased by casino hotels, where a portion was resold by the hotels in transactions on which tax was collected from the customer, and the remaining portion was given by the hotels to its customers and employees at no charge, on which no tax was due or collected). As authorized by statute, plaintiff may seek a prospective closing agreement with respect to tax due on parts used in the performance of its service contracts. With respect to the assessment on plaintiffs use of the parts that is in issue here, however, plaintiff elected to structure its sales of service contracts as transactions at a single price covering both parts and labor, without separately stating the portion of the price representing the parts. A taxpayer is free to organize its affairs as it chooses, but must accept the tax consequences of its choice, whether or not originally contemplated by it. General Trading Co., Inc. v. Director, Div. of Taxation, 83 N.J. 122, 136-37, 416 A.2d 37 (1980).
The Director’s regulations and other publications reasonably construed the Act and were clear that plaintiff was required to pay tax on parts used to service its customers’ heating and cooling units, which are real property. That plaintiff elected to collect its fees for that service in a single price on which it collected sales tax from its customers does not make the Director’s regulations misleading. Accordingly, I conclude that plaintiff was subject to use tax on the materials it used in the performance of its service contracts.
Plaintiff alternatively contends that, even if it is liable for the tax, the penalties and interest in excess of three percentage points above the prime rate should be waived. It argues that the Director’s failure to waive those additional amounts constitutes an *356 abuse of discretion. Pursuant to N.J.S.A. 54:49-3, plaintiff was assessed $6,429.55 in interest as of July 12, 2004, and $1,387.21 as a tax amnesty penalty pursuant to N.J.S.A. 54:53-18(b).
Plaintiff bases its position on what it asserts are three facts: first, that the Division has'not published any specific guidance contrary to plaintiffs position; second, plaintiff has been audited by the Division several times, and the Division never previously raised the issue of tax on the parts used in performing maintenance and repairs under service contracts; and third, the Division reaffirmed the plaintiffs position regarding its liability for tax on the parts in a series of e-mails exchanged by plaintiff and a representative of the Division following the audit of the plaintiff.
As set forth above, the Division has promulgated regulations and published explanatory bulletins plainly stating that a contractor is liable for tax on parts used in performing services on real property. Plaintiffs first point therefore lacks merit.
As for its second point, the courts of this state have consistently stated that “estoppel is rarely invoked against the government, particularly against the Director of Taxation.” Williams Termite & Pest Control, Inc. v. Director, Div. of Taxation, 18 N.J.Tax 444, 450 (1999), citing Airwork Serv. Div. v. Director, Div. of Taxation, 97 N.J. 290, 296-99, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985); see also Tischler v. Director, Div. of Taxation, 17 N.J.Tax 283, 295-96 (1998); Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J.Tax 338, 353-57 (1995) (both to the same effect). “Each audit period stands on its own.” Yilmaz, Inc. v. Dir., Div. of Taxation, 22 N.J.Tax 204, 226 (2005), aff'd, 390 N.J.Super. 435, 915 A.2d 1069; 23 N.J.Tax 361, 2007 WL 1429420 (App.Div.2007). Accordingly, whatever may have occurred in a previous audit, the Director is not estopped from assessing tax here.
The plaintiff primarily contends that its position was a reasonable interpretation of the law, as demonstrated by a series of email exchanges with a representative of the Division, and that the Director should have waived penalty and interest under the cir *357 cumstances. N.J.S.A. 54:49-11(a) permits the Director to waive or abate a penalty or interest:
(a) If the failure to pay any such tax when due is explained to the satisfaction of the director, he may remit or waive the payment of the whole or any part of any penalty and may remit or waive the payment of any interest charge in excess of the rate of three percentage points above the prime rate including any such penalty or interest with respect to deficiency assessments made pursuant lo R.S. 54:49-6.
N.J.S.A. 54:49-11(b) mandates that the Director waive penalties and interest in certain circumstances:
(b) The director shall waive the payment of any part of any penalty or any part of any interest attributable to the taxpayer’s reasonable reliance on erroneous advice furnished to the taxpayer in writing by an employee of the Division of Taxation acting in the employee’s official capacity, provided that the penalty or interest did not result from a failure of the taxpayer to provide adequate or accurate information.
Under N.J.S.A. 54:49-ll(b), four factors must be met for the Director to grant relief from penalties and interest: (1) an authorized Division employee provides written advice to the taxpayer; (2) the advice is based on adequate and accurate information provided by the taxpayer; (3) the advice is erroneous; and (4) the taxpayer reasonably relied on the incorrect advice. L & L Oil Serv., Inc. v. Director, Div. of Taxation, 19 N.J.Tax 390, 406; 340 N.J.Super. 173, 189, 773 A.2d 1220 (App.Div.2001); Campo Jersey, Inc., supra, 22 N.J. Tax at 275; Tischler, supra, 17 N.J.Tax at 296.
Plaintiff correctly acknowledges that N.J.S.A. 54:49-11(b) is not available as a remedy, because the e-mail exchange occurred after the tax periods at issue, with the first e-mail being sent by plaintiff on the same day that the Division issued its notice of assessment. Thus, plaintiff could not have relied on any information provided by the Division employee. However, plaintiff asserts that penalties and interest should be abated pursuant to N.J.S.A. 54:49-11(a) because the e-mail exchange indicates that the Director agreed with its interpretation, demonstrating that its position is reasonable and satisfactorily explained.
The Director counters that the information provided to the Division was not sufficient or accurate enough to warrant an abatement of interest or penalties. The Director further asserts *358 that the decision whether to abate or waive interest rests in the Director’s discretion.
I find that the e-mails sent by plaintiff to the Division were carefully crafted to avoid stating whether the services were performed on real property or tangible personal property. As noted above, the Act distinguishes between parts and materials used to perform services on tangible personal property, N.J.S.A. 54:32B-2(e)(1)(B), and parts and materials used to perform services on real property, N.J.S.A. 54:32B-2(e)(2), treating the former as a sale for resale to the purchaser of the service, and treating the latter as a sale to the contractor as the end user of the parts. Although it would have been preferable if the Division’s representative had clarified the ambiguity in plaintiffs questions, there is nothing in her response that supports plaintiffs notion that its interpretation of the statute is a reasonable one, or that it satisfactorily explained why it failed to pay the tax when due.
In Media Graphics, Inc. v. Director, Division of Taxation, 7 N.J.Tax 23, 32-33 (1984), aff'd 8 N.J.Tax 321 (App.Div.1986), the court first analyzed the Director’s argument that the determination whether to waive interest and/or penalties is not reviewable by the Tax Court, holding that a taxpayer has the right to appeal any assessment of the Director, including an assessment of penalty and interest. The court stated:
In reviewing an administrative action it is well settled that “courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable.” The statute under consideration delegates authority to the director to determine whether under particular circumstances penalty or interest should be remitted or waived. In fact, its terms grant the director considerable discretion. Under such circumstances, his actions should not be overturned unless they are manifestly corrupt, arbitrary or misleading. [Id. at 33 (citations omitted).]
Substantively, the court found that a statement made by the Director in State Tax News (a quarterly publication of the Division) “was sufficiently misleading in the circumstances of this case to warrant the abatement of interest and penalty” and that “[p]laintiff s challenge to the assessment was based in large measure on this directive.” Id. at 34. The court held that “[a] *359 taxpayer should not be made to pay additional interest and a penalty when its position is reasonably based upon the director’s published statements.” Ibid. This case is easily distinguished from the matter before the court in Media Graphics. The plaintiff in Media Graphics relied on a published statement of the Director that was misleading. Here, there were multiple published statements available to the plaintiff that stated in clear terms the taxability of its purchases, but were either ignored by, or unknown to plaintiff.
In Newman v. Director, Division of Taxation, 14 N.J.Tax 313, 315 (1994), aff'd 15 N.J.Tax 228 (App.Div.1995), the plaintiff, a sole proprietor in the business of reflnishing hardwood floors, argued that his work did not constitute “maintaining, servicing or repairing real property,” seivices taxable pursuant to N.J.S.A. 54:32B-3(b)(4). Plaintiff supported this belief with federal and state tax cases and dictionary definitions; the Director pointed to statutory interpretation in New Jersey case law and an instructive regulation. While the court, held that plaintiffs services were taxable, plaintiff maintained that the penalties should be waived under N.J.S.A. 54:49-11(a) since “he had reasonable cause to believe that his seivices were not taxable, and ... there were no cases, regulations or rulings to the contrary.” Id. at 330. The court noted that “the Director has considerable discretion with regard to the assessment of penalties and interest and the waiver of same,” citing Media Graphics, supra, 7 N.J.Tax at 33, and that only arbitrary or unreasonable actions should be overturned by the court. Id. at 331. The Newman court found that plaintiffs belief that his services were not subject to tax ‘'was not rooted in the language of the statute or the regulations.” Ibid. The court concluded that “[t]he Director’s action was not manifestly unreasonable, therefore, it must be affirmed.” Ibid.
The Newman court’s situation is similar to the case at hand. Here, plaintiff argues that to hold its purchases subject to tax would be unfair, and its belief was “so clearly reasonable that it more than satisfactorily explains Plaintiffs failure to pay Use Tax.” But, as in Newman, there were directives published by the Division instructing the taxpayer on the taxability of its transac *360 tion. In Newman, the regulation cited was not directly applicable to plaintiffs services, but the court found it sufficiently instructive to be applicable. 14 N.J.Tax at 331. In this case, the Director’s regulations and publications were directly on point, clearly stating how plaintiffs purchases and services should be taxed.
Plaintiff also cites Goffredo v. Director, Division of Taxation, 9 N.J.Tax 135, 151 (1987), where the court vacated the imposition of penalties and interest above the minimum statutory rate. In that case, plaintiffs appealed an income tax assessment under the mistaken belief that they were not New Jersey residents subject to the New Jersey Gross Income Tax Act during the periods in question. The court found that they were subject to New Jersey income taxes, but also found that plaintiffs’ conclusion that they were not residents for purposes of the tax was not unreasonable and that the interest and penalty should be abated. Ibid. Goffredo, however, did not implicate N.J.S.A. 54:49-11(a). Rather, it involved N.J.S.A. 54A:9-6(b),[8] a provision of the Gross Income Tax Act which provided, “If any part of a deficiency is due to negligence or intentional disregard of this act or rules or regulations hereunder (but without intent to defraud), there shall be added to the tax an amount equal to 5% of the deficiency.” The court also cited N.J.S.A 54A:9-6(a), which provided that in cases of late filing, the penalties of the State Tax Uniform Procedure Law were to be added “unless it is shown that such failure is due to reasonable cause and not due to willful neglect.” The court concluded that the plaintiffs’ failure to file as New Jersey residents was not due to negligence nor to an intentional disregard of the statute or regulations. Goffredo, supra, 9 N.J.Tax at 151.
The standard analyzed in Goffredo under the Gross Income Tax Act is not the same standard applicable here. In the present case, the question is whether the Director abused his discretion in determining that plaintiff had failed to provide a satisfactory explanation for its failure to pay tax. As stated in Media Graphics, supra, 7 N.J. Tax at 33, the court should not substitute its *361 discretion for that of the Director, unless the Director’s determination is manifestly arbitrary or unreasonable. That is not the case here.
In Patel v. Director, Division of Taxation, 13 N.J.Tax 509, 516 (1993), the court noted that “['t]he Director is not required to establish bad faith on the taxpayer’s part to sustain the denial of an abatement request.” Rather, the taxpayers must show a “reasonable basis” for a mistaken interpretation of the law. I find that the plaintiff here has failed to show such a reasonable basis.
Finally, while the waiver of a penalty generally rests in the discretion of the Director, the penalty here was assessed pursuant to N.J.S.A. 54:53-18(b), as part of the tax amnesty effective in 2002. The Legislature specifically provided that the penalty “shall not be subject to waiver or abatement.” Accordingly, the Director had no authority to waive the penalty in this case.
For the foregoing reasons, the Director’s assessment of tax, interest and penalty is affirmed. The Director’s motion for summary judgment is granted and plaintiffs cross-motion is denied.

 The supplemental stipulation of facts indicated that plaintiff also purchases some parts from retailers who collected tax from the plaintiff. Only tax on parts taken from inventory is at issue here.

 N.J.S.A. 54:32B-2(e) was amended by L. 2006, c. 44, § 1. The amendment does not affect the analysis of taxability of the transaction in issue here.

 N.J.A.C. 18:24-5.8(c) was amended in 2003 to add the underlined language:
In all instances, sales or use taxes on materials used in maintaining, servicing, or repairing real property where such materials are provided by the contractor as part of his services, are the responsibility of the contractor rather than of the contractor's customer. The contractor should charge tax only on the separately stated service portion of his bill.
[35 N.J.R. 3848(a) (August 18, 2003).]
Although the amendments further clarify the Director's construction of the statute, they do not change the meaning of the regulation as it was in effect during the audit period.

 The Division of Taxation has revised this publication several times. Plaintiff referred in its brief to the April 2004 revision. The September 1999 revision would have been in effect during the audit period, and that revision is cited here. As relevant here, the various changes to S&U-3 do not affect the analysis.

 Plaintiff refers in its brief to the revision dated 5/03. The revision dated “3/98” appears to have been the one in effect during the audit period, and is the revision referred to in this opinion. The relevant provisions of each revision are the same.

 The court was not provided with, nor could it locate the version of S&U-2 in effect during the audit period. The revision dated 3/04 plainly states at page 1 that: "Sales of materials and supplies to contractors are taxable because the contractor is considered the final consumer (or end user) of these items.”

 This version appears to have been in effect during the audit period. The language of the current revision, ”6/06,” is identical.

 The statute was amended by L. 1987, c. 76, § 59, to increase the penalty to 10%.