ANDREW, J.T.C.
In this state tax matter, plaintiff, Joseph Newman, sole proprietor of Best Floors, challenges the assessment, by the Director of the Division of Taxation, of sales tax, plus interest and penalty, under the Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29. Plaintiff is in the business of refinishing hardwood floors, and contends that such services are not subject to the sales tax pursuant to N.J.S.A 54:32B-3(b)(4). The amount of tax deficiency established by the Director in a final determination letter of February 26, 1992, was $20,544.18 plus penalty and interest. The parties, however, have stipulated that the correct total amount of *301 tax in dispute for tax years 1987, 1988 and 1989 is $18,906 plus interest and penalty.[1]
Plaintiffs position is that his services are not subject to sales tax in the first instance because they do not consist of “maintaining, servicing or repairing real property” pursuant to N.J.S.A-54:32B-3(b)(4). Plaintiff further argues that even if his activities can be considered maintenance, service or repair, they still are not subject to taxation because they result in capital improvements to real property. Plaintiff relies primarily on federal income tax cases and the testimony of his witnesses at trial to support this position. Additionally, plaintiff argues that he had reasonable cause to believe that his services were not taxable, and therefore, the Director’s assessment of penalties against him should be disallowed.
The Director contends that plaintiffs activities are taxable as maintenance, service or repair of real property. Moreover, the Director argues that hardwood floor refinishing does not result in a capital improvement to real property which would entitle plaintiff to an exemption from sales tax. The Director maintains that there is no indication in the New Jersey Sales and Use Tax Act that federal taxation principles regarding capital expenditures are to be used in determining the definition of “capital improvement” for New Jersey sales tax purposes. Finally, the Director asserts that his assessment of penalties against plaintiff is reasonable in that plaintiff did not provide a satisfactory explanation for his failure to remit sales tax.
*302 /.
Do hardwood floor refinishing services constitute “maintaining, servicing or repairing real property” pursuant to N.J.S.A 5D-3ZB-3(b) (tí ?
The Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29, imposes a tax upon every sale of tangible personal property, except as otherwise provided, and upon receipts from every sale, except for resale, of certain enumerated services. Among the services subject to taxation under the act is “maintaining, servicing or repairing real property,” pursuant to N.J.S.A 54:32B-3(b)(4), which, during the relevant years, provided in part as follows:
[T]here is imposed and there shall be paid a tax ... upon:
(b) The receipts from every sale, except for resale, of the following services:
(4) Maintaining, servicing or repairing real property, ... whether the services are performed in or outside of a building, as distinguished from adding to or improving such real property by a capital improvement, but excluding services rendered by an individual who is not in a regular trade or business offering his services to the public, and excluding interior cleaning and maintenance services, garbage removal and sewer services performed on a regular contractual basis for a term not less than 30 days, other than window cleaning, and rodent and pest control.
[Emphasis added.]
Plaintiffs position is that the services he performs in refinishing hardwood floors do not constitute “maintaining, servicing or repairing real property” and, thus, are not taxable under the act. Further, plaintiff argues that, even if his services constitute maintenance, service or repair of real property, refinishing hardwood floors is a capital improvement to the floor because the process allegedly extends the life of the floor. Moreover, plaintiff maintains that individuals who have their floors refinished do not do so every year, therefore the refinishing itself has a life in excess of one year and would be considered a capital improvement under federal standards.
*303 Plaintiff does not claim an exemption from sales tax under N.J.S.A. 54:32B-3(b)(2)(v), which reads as follows:
[T]here is hereby imposed and there shall be paid a tax ... upon:
(b) The receipts from every sale, except for resale, of the following services:
(2) Installing tangible personal property, or maintaining, servicing, repairing tangible personal property not held for sale in the regular course of business ... except ... (v) services rendered in installing property which, when installed, will constitute an addition or capital improvement to real property, property or land.
[Emphasis added.]
Plaintiff is unable to claim this exemption because there is no installation of tangible personal property involved in the refinishing of hardwood floors.[2]
Plaintiff argues, however, that no installation of tangible personal property is necessary for the exemption of N.J.S.A 54:32B-3(b)(4) to apply. Plaintiffs position seems to be that the language, “as distinguished from adding to or improving such real property by a capital improvement,” found in N.J.S.A 54:32B-3(b)(4) means that any improvement to real property which is capital in nature is tax exempt, regardless of whether there has been an installation of tangible personal property.
Plaintiff maintains that since his services are capital improvements under federal standards, they are capital improvements under the New Jersey Sales and Use Tax Act, and, therefore, even if his services would otherwise be taxable, he should not have to pay sales tax under the exemption provided by N.J.S.A 54:32B-3(b)(4). Plaintiff further argues that, though he believes the language of the statute is clear, to the extent it is unclear the *304 statutory language should be construed in his favor pursuant to Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376, 476 A.2d 741 (1984) and Cooperstein v. Director, Div. of Taxation, 13 N.J.Tax 68 (Tax 1993), aff'd, 14 N.J.Tax 192 (App.Div.1994).
In response, the Director maintains that the words of the statute must be given their plain meaning, and agrees with plaintiff that when interpretation of a taxing provision is doubtful the language should be construed in favor of the taxpayer. In this case, however, the Director argues that the act presumes that receipts from services enumerated in N.J.S.A 54:32B-3(b) are taxable until the taxpayer meets the burden of proving the contrary. Citing G.E. Solid State v. Director, Div. of Taxation, 132 N.J. 298, 625 A.2d 468 (1993) and Fedders Fin. Corp. v. Director, Div. of Taxation, supra, the Director asserts that when a taxpayer claims a statutory exemption, the language of the exemption must be strictly construed against the taxpayer.
Plaintiff disputes that the burden of proof should fall upon him to show that his services are not taxable. Plaintiff asserts that N.J.S.A. 54:32B-12, upon which the Director relies, applies only when the services are initially subject to tax. Plaintiff argues that his position has consistently been that his activities were not subject to tax in the first place, therefore he maintains that it is the Director’s burden to prove the taxability of hardwood floor refinishing services.
Plaintiffs argument is not persuasive. The act presumes that the enumerated services are taxable until the party challenging taxability can prove otherwise. Hospital Portrait Serv. v. Director, Div. of Taxation, 6 N.J.Tax 305, 314 (Tax 1983), aff'd o.b. per curiam, 7 N.J.Tax 431 (App.Div.1984), certif. denied, 101 N.J. 235, 501 A.2d 912 (1985). Moreover, the Director’s assessment is presumptively correct, and plaintiff bears the burden to prove the contrary. Atlantic City Transp. Co. v. Director, Div. of Taxation, 12 N.J. 130, 146, 95 A.2d 895 (1953) (“The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise.”). Plaintiff had to prove at trial that *305 Ms services do not fall within the category of “maintaining, servicing or repairing real property” in order to be relieved from taxation.
Plaintiff relies upon dictionary defimtions in support of his argument that the services he performs do not constitute main-taimng, servicing or repairing real property. Plaintiff argues that cleaning, washing and dusting hardwood floors constitute maintenance, service and repair, and that since he performs none of these tasks, Ms activities should not be taxed. To the contrary, plaintiff states, refimshing improves the hardwood floor, increasing its useful life. Plaintiff further contends that the defimtions of “capital assets” and “capital expenditure,” clearly encompass hardwood floor refimshing, wMch plaintiff says is a long-term asset.
Plaintiff looks to federal taxation cases in order to demonstrate that hardwood floor refinisMng is a capital expenditure. Plaintiff cites Treas.Reg. § 1.263(a)-2 (as amended in 1987), wMch provides examples of capital expenditures and reads in relevant part as follows:
The following paragraphs include examples of capital expenditures:
(a) The cost of acquisition, construction, or erection of buildings, machinery and equipment, furniture and fixtures, and similar property having a useful life substantially beyond the taxable year.
Plaintiff relies upon tMs regulation, as well as several federal tax cases, to bolster Ms argument that hardwood floor refimshing is not maintaimng, servicing or repairing, but instead is a capital asset because it has a useful life of more than one year. Plaintiff acknowledges that these cases have merely persuasive, as opposed to precedential, value, if they have any value at all.
The Director, on the other hand, argues that floor refimshing is taxable as maintenance, service or repair of real property, and that there is no indication that the words, “capital improvement” were meant to be construed according to federal tax principles. The Director points out that there is no legislative Mstory wMch would provide guidance to clarify tMs issue, but that since the act was drawn from the New York Sales and Compensating Use Tax Law, L. 1965. c. 93 (codified at N. Y. Tax Law §§ 1101 to 1148 *306 (McKinney 1987)), New York cases may be of assistance in interpreting the New Jersey statute. See N.J. Bell Tel. v. Director, Div. of Taxation, 152 N.J.Super. 442, 450, 378 A.2d 38 (App.Div.1977, Horn, J.A.D., concurring), certif. denied, 75 N.J. 594, 384 A.2d 824 (1978).
The New York statute as originally enacted contains language virtually identical to the New Jersey statute.[3] The Director argues that the New York cases hold that the “interior cleaning and maintenance services” exemption was intended to encompass cleaning and simple, minor repairs, while taxable activities were intended to include more complicated repairs and maintenance duties. See National Elevator Indus., Inc. v. N.Y. State Tax Comm’n, 49 N.Y.2d 538, 427 N.Y.2d 586, 404 N.E2d 709 (1980); Allied Maintenance Corp. v. N.Y. State Tax Comm’n, 115 A.D.2d 143, 495 N.Y.S.2d 518 (1985); C.H. Heist Corp. v. State Tax Comm’n, 66 A.D.2d 499, 414 N.Y.S.2d 751 (1979), order modified, 50 N.Y.2d 438, 429 N.Y.2d 570, 407 N.E.2d 416 (1980); Direen Operating Corp. v. State Tax Comm’n, 46 A.D.2d 191, 361 N.Y.S.2d 736 (1974).
Plaintiff disputes the contention that the New Jersey sales tax act was drawn from the New York act, but agrees that the New York decisions interpreting that state’s sales tax act may be instructive because the language of the two statutes is identical. Plaintiff argues, however, that the federal cases he relies upon are *307 entitled to greater weight because “some of the cases and regulations pre-date 1966 and, accordingly, were concepts established previous to the enactment of the New Jersey Sales Tax Legislation.” Additionally, plaintiff contends that the New York cases cited by the Director are irrelevant. Specifically, plaintiff says that National Elevator, supra, is inapplicable to this matter because it makes no determination as to whether hardwood floor refinishing services are repairs. Plaintiff also claims, without discussion, that C.H. Heist Corp., supra, is not helpful to this case.
Contrary to plaintiffs contentions, there can be little dispute that the New Jersey sales tax legislation was drawn from the New York act. See N.J. Bell Tel. v. Director, Div. of Taxation, supra; see also Mariner’s Landing, Inc. v. Director, Div. of Taxation, 11 N.J.Tax 215, 222 (Tax 1989); N.J. Dental Serv. Plan, Inc. v. Baldwin, 7 N.J.Tax 421, 428 (Tax 1985), aff'd, 8 N.J.Tax 335 (App.Div.1986); Futurevision Cable Enter., Inc. v. Director, Div. of Taxation, 6 N. J.Tax 149, 158 (Tax 1983); Tamton Enter., Inc. v. Director, Div. of Taxation, 5 N.J.Tax 209, 213 (Tax 1983), aff'd o.b. per curiam, 6 N.J.Tax 347 (App.Div.1984); Armstrong v. Director, Div. of Taxation, 5 N.J.Tax 117, 125 (Tax 1983), aff'd per curiam, 6 N.J.Tax 447 (App.Div.1984); Spencer Gifts, Inc. v. Director, Div. of Taxation, 182 N.J.Super. 179, 3 N.J.Tax 482, 501, 440 A.2d 104 (Tax 1981); Airwork Serv. Div. v. Director, Div. of Taxation, 2 N. J.Tax 329, 345 (Tax 1981), aff'd o.b. per curiam, 4 N.J.Tax 532 (App.Div.1982), aff'd, 97 N.J. 290, 478 A.2d 729 (1984) , cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985) .
■ The New York cases cited by the Director are quite useful in deciding whether hardwood floor refinishing services constitute “maintaining, servicing or repairing real property.” In National Elevator, supra, the court <distinguished between repairs of a simple nature, which fell within the exclusion for “interior cleaning and maintenance services,” and more substantial repairs, which were taxable as “maintaining, servicing or repairing real property.” In Direen Operating Corp., supra, the court found that the simple repair tasks performed by plaintiff in that case were excluded from taxation as “interior cleaning and maintenance *308 services.” Similarly, in C.H. Heist Corp., supra, the court held that the taxing commission’s determination that “interior cleaning” applied to ordinary janitorial services was reasonable and therefore upheld that determination. Finally, in Allied Maintenance Corp., supra, the court found that more complicated maintenance tasks requiring special skills and/or technical training were taxable services.
Clearly, these cases shed substantial light on the issue in this case. Plaintiff argues that he does not vacuum, wash or dust hardwood floors, services which he apparently considers maintenance, service or repair. This argument does not help plaintiff. Under the New York case law cited above, services such as vacuuming, dusting or washing would be considered “interior cleaning and maintenance services” and thus excluded from taxation. Plaintiffs services are more complex and require more expertise and training and, thus, under the New York cases would be taxable as maintenance, service or repair of real property.
The Director argues that the language of N.J.S.A 54:32B-3(b)(4) involving “maintaining, servicing or repairing” is not limited to mere janitorial services, as plaintiff claims. The Director correctly points out that the statute excludes from taxation “interi- or cleaning and maintenance services ... performed on a regular contractual basis for a term not less than 30 days,” and claims that interior cleaning and maintenance services, which plaintiff admittedly does not perform, are thus a subset of “maintaining, servicing or repairing.” Therefore, the Director contends, there is no basis for plaintiffs argument that, because he does not perform interior cleaning and maintenance services, his activities are exempt from taxation.
The Director thus asserts that maintenance, service and repair of real property are not equivalent to the exempt activities of interior cleaning and maintenance and, therefore, the fact that plaintiff apparently does not clean or vacuum the floors is irrelevant to whether his services are taxable. Simple interior cleaning, which plaintiff admittedly does not perform, is an exempt activity, but the Director’s position is that more complex tasks, such as *309 those performed by plaintiff, are encompassed within the definition of “maintaining, servicing or repairing” and are taxable.
Further, the Director maintains that the services performed by plaintiff are included within the definitions of “maintain,” “service” and “repair.” “Maintain” is defined in Webster’s Seventh New Collegiate Dictionary (G. & C. Merriam Co. 1967) as “to keep in an existing state” or “preserve from failure or decline.” “Repair” is defined as “to restore by replacing a part or putting together what is torn or broken; fix” or “to restore to a sound or healthy state; renew.” “Service” is defined as “to repair or provide maintenance for.” The Director argues that to refinish a hardwood floor is precisely to maintain, service or repair that floor, within the generally accepted meaning of those terms, by restoring it to a previous condition and removing surface imperfections from the wood.[4] I agree.
Plaintiffs services clearly constitute maintenance, service or repair within the context of the statute. Plaintiffs refinishing services consist of procedures which “renew” the finish of the floor, presumably restoring it to a condition similar to that which existed when the floor was first installed. Plaintiff sands the floor and removes surface imperfections from the wood, applies a stain if desired and then finishes with three coats of polyurethane. The appearance of the floor is then almost as good as that of a new floor. This is obviously maintenance, service or repair. Plaintiff’s activities do not consist of simple, minor repairs which are encompassed within the exemption for “interior cleaning and maintenance services.” To the contrary, plaintiffs services are more complex and require training and expertise. The issue then becomes whether plaintiffs services are exempt from taxation because they result in capital improvements to real property.

*310
II.

Do plaintiffs services constitute capital improvements within the context of N.J.S.A. 5I:32B-3(b)(I)?

The Director contends that, unless plaintiffs services amount to a capital improvement to the real property, they are taxable under the definition of “maintaining, servicing or repairing real property.” Contrary to plaintiff, the Director maintains that federal income tax principles cannot be utilized to determine whether plaintiffs services constitute a capital improvement. The Director first points out that there is nothing in the statute indicating that the Legislature intended to use a one-year test, as is used in federal income tax law, to ascertain whether a service results in a capital improvement. Next, the Director argues that the Legislature’s use of the words, “capital improvement” as opposed to “capital expenditure” (as reflected in I.R.C. § 263) is significant because it highlights the differences between federal income tax law and New Jersey sales and use tax law. For federal purposes, the tax is assessed on the purchaser of services, while in the New Jersey sales tax act, the obligation to collect tax is placed on the vendor. Additionally, the Director says, the sales tax is assessed without regard to whether the services were performed for an individual’s personal use or for a business, unlike the federal statute, which limits a deduction for this kind of expense to expenses incurred in carrying on a trade or business. I.R.C. § 162. In conclusion, the Director asserts that there is no indication that the New Jersey Legislature intended to include federal tax principles regarding capital expenditures in the Sales and Use Tax Act.
In response, plaintiff argues that Georgian Gardens Tenants Ass’n v. Georgian Gardens, 249 N.J.Super. 475, 592 A.2d 641 (App.Div.1991) is relevant to the issue of using federal tax principles to determine what constitutes a capital improvement. That case concerned whether a replacement boiler in an apartment building was a capital improvement pursuant to a municipal rent leveling ordinance. This ease does not lend the support for plaintiffs position that plaintiff asserts. At most the court merely *311 stated that federal tax principles could be instructive, but clearly were not controlling. Id. at 478, 592 A 2d 641.
There is no indication in the New Jersey Sales and Use Tax Act that the Legislature intended to adopt federal tax principles in construing the provisions of the act. When the Legislature did intend to adopt federal principles, as it did for some taxation statutes, that intent was clearly expressed within the language of the statute. See, e.g., N.J.S.A 54A:l-2e, 54A:2-1. There is no such language in the relevant sections of the sales tax legislation. Moreover, plaintiffs argument that federal tax principles are entitled to great weight because those concepts pre-dated New Jersey’s adoption of its sales tax statute supports the Director’s position rather than that of plaintiff, because the Legislature was presumably aware of those principles, such as the one-year capital asset test, and chose not to adopt them.[5]
The Director notes that the term “capital improvement” is also used in N.J.S.A 54:32B — 3(b)(2)(v), which contains an exemption to the taxability of installation of tangible personal property for “services rendered in installing property which, when installed, will constitute an addition or capital improvement to real property, property or land.” The Director argues that N.J.S.A 54:32B-3(b)(4) must be construed with reference to N.J.S.A 54:32B-3(b)(2)(v), and therefore, a capital improvement under the former section must necessarily involve an installation of tangible personal property pursuant to the latter section. The Director points out that plaintiff does not claim that his services involve the installation of tangible personal property. Even if a capital improvement could be achieved other than by an installation of tangible personal property, the Director says, “capital improvement” must be defined the same way in both N.J.S.A 54:32B- *312 3(b)(2)(v) and -3(b)(4). In support of this position, the Director refers to various regulations, contending that they are well within his delegated authority.
The regulations cited by the Director define the terms, “capital improvement” and “repair” as follows:
“Capital improvement” means an installation of tangible personal property which results in an increase of the capital value of the real property or a significant increase in the useful life of such property.
“Repair” means maintaining the existing value of the property.
[N.J.AC. 18:24 — 5.16(a)(6)(i), (ii), emphasis added.]
The Director points out that N.J.AC. 18:24-5.7 contains the identical definition of “capital improvement.” Additionally, N.J.AC. 18:24-5.16(a)(6)(iii) lists examples of capital improvements, which include construction or installation of various fixtures.
Plaintiff contends that his services fit within the Director’s definition of “capital improvement” because hardwood floor refinishing extends the life of the floor. Plaintiff points out that the regulation is written in the disjunctive, and therefore only one of the two criteria set forth for defining a capital improvement need be satisfied. The Director asserts that no testimony was presented with regal’d to an increase either in the value of the property or the useful life of the property for which plaintiff performed hardwood floor refinishing.
Though the Director acknowledges that plaintiffs witnesses testified that floor refinishing should last between ten and thirty years, the Director argues that this time frame was given without reference to the expected useful life of the floor prior to the refinishing. Moreover, the Director maintains that plaintiffs services merely renew the floor, preventing a decrease in its useful life but not adding to that useful life. The Director contends that plaintiffs services merely extend the useful life of the finish of the floor, not the floor itself or the underlying real estate. Further, the Director asserts that plaintiffs services are undertaken for the sake of appearance and not to extend the useful life of the floor.
*313 Even if plaintiffs services could be said to rise to the level of a capital improvement in certain situations, such as when the floor is so badly deteriorated that the useful life of the building may decrease, the Director maintains that plaintiff has presented no proof in that regard for the transactions at issue.
Plaintiff asserts that the Director admits that “all of plaintiffs witnesses agreed that floor refinishing will extend the life of the floor.” Plaintiff appears to believe that the Director is admitting that the refinishing will extend the life of the floor, when, in fact, the Director is merely acknowledging the testimony of plaintiffs witnesses. As the Director correctly points out, plaintiff presented no credible evidence that the life of any floor he refinished during the years at issue was lengthened by virtue of his services. The most that can be said of plaintiffs services is that they enhance the appearance of the floor and prevent deterioration.
Contrary to plaintiffs assertion, refinishing does not increase the useful life of the floor, but rather prevents a decrease in that useful life.[6] The two are not equivalent for purposes of defining a capital improvement under the statute and regulations. Moreover, the fact that plaintiff and his witnesses, all of whom are associated with the hardwood floor refinishing business, testified that refinishing extends the useful life of the floor is not persuasive. Body-Rite Repair Co. v. Director, Div. of Taxation, 89 N.J. 540, 543, 446 A.2d 515 (1982) (“We construe statutes in accord with the ordinary meaning or plain understanding of their words. Expert testimony on esoteric concepts of syntax or trade usage has little or no relevance to the interpretation of statutory language.” (Citation omitted)).
Moreover, plaintiffs failure to obtain Form ST-8, the Director’s certificate of capital improvement, from any of his clients, militates against his position that his services result in capital improve- *314 merits to real property. If plaintiff regarded hardwood floor refinishing as a capital improvement, he was obligated to obtain a completed Form ST-8 for each job he performed. Plaintiffs argument that he had no need to obtain Form ST-8 because his services are not taxable in the first instance as “maintaining, servicing or repairing real property” has no bearing upon the issue of whether his services result in capital improvements.
The Director next argues that the regulations regarding installation of floor coverings, such as carpeting or linoleum, are instructive in this case, referring specifically to N.J.A.C. 18:24-22.3(b) and -22.4. The latter regulation, in particular, provides guidance to contractors who install floor coverings with regard to whether their services will result in a capital improvement to the real property. The regulation provides:
(a) Since it is usually difficult or impractical to determine the character and condition of a floor after a floor covering has been permanently affixed to it, an installer of floor coverings should be prepared to satisfy the New Jersey Division of Taxation, in case of audit, each job claimed to be a capital improvement.
(b) It is suggested that the installer’s permanent records contain the following information regarding each capital improvement job:
1. The composition of the subfloor upon which the floor covering was permanently affixed. (For instance, cement, plywood, diagonal tongue-and-groove).
2. In cases of deteriorated finished floors, the cause and degree of deterioration.
3. Where preinstallation work was required — for. instance, where previously cemented linoleum was removed before the new floor covering was permanently affixed — a statement to that effect should be retained.
4. Any other information that would enable an auditor to verify the performance of a capital improvement.
[N.J.A.C. 18:24-22.4]
The Director argues that these regulations have been utilized by the Tax Court in deciding whether or not a particular installation resulted in a capital improvement. See H.J. Bradley, Inc. v. Director, Div. of Taxation, 4 N.J.Tax 213 (Tax 1982) (whether installation of an above-ground swimming pool was a capital improvement); see also Elbert Lively & Co., Inc. v. Director, Div. *315 of Taxation, 5 N.J.Tax 431 (Tax 1983).[7] Though the Director recognizes that the above-cited regulations concern instances where there has been an installation of property, he maintains that the principles expressed are equally applicable to situations where there has been no such installation, namely, that either the value of the property must increase or the useful life of the property must increase significantly.
Plaintiff disputes the contention that these regulations are applicable to the transactions at issue, because plaintiff does ndt install tangible personal property, and maintains that even if they were applicable, his services fall within the definition of capital improvement as set forth by the Director. However, as explained earlier, plaintiff has not presented any credible evidence with regard to the issue of whether floor refinishing extends the life of the floor, and therefore it is impossible to find that plaintiffs activities result in capital improvements on that basis even if there can be a capital improvement where there has been no installation of tangible personal property.
In conclusion, plaintiff has failed to sustain his burden of proving that the transactions at issue are not taxable because they are not “maintaining, servicing or repairing real property.” Plaintiffs activities are clearly encompassed within the definitions of *316 these terms as they are generally understood.[8] Moreover, plaintiff is not entitled to a capital improvement exemption pursuant to N.J.S.A. 54:32B — 3(b)(4). Even if there could be a capital improvement without an installation of property, plaintiff has not demonstrated that his services result in capital improvements as defined by the Director; namely, he has not shown that hardwood floor refinishing either increases the value of the underlying property or extends its useful life. Further, he did not obtain completed certificates of capital improvement for any of the transactions at issue. Consequently, the determination of the Director that plaintiff is liable for sales tax on the transactions at issue in this matter must be affirmed.

III.

Should the penalties assessed against plaintiff for failure to collect and remit the disputed sales tax be abated?

With regard to the issue of penalties assessed in this matter, plaintiff asserts that he had reasonable cause to believe that his services were not taxable, and that there were no cases, regulations or rulings to the contrary. Therefore, plaintiff maintains that the penalties should not have been assessed.
The Director points out that the penalties were assessed under N.J.S.A. 54:49-6 prior to its amendment in 1992 (effective July 1, 1993). N.J.S.A 54:49-lla, the statutory provision which concerns waiver of penalty and interest, read at all times relevant to this case as follows:
*317 If the failure to pay any ... tax when due is explained to the satisfaction of the director, he may remit or waive the payment of the whole or any part of any penalty and may remit or waive the payment of any interest charge in excess of the rate of three percentage points above the prime rate including any such penalty or interest with respect to deficiency assessments made pursuant to R.S. 54:49-6.
In Media Graphics, Inc. v. Director, Div. of Taxation, 7 N.J.Tax 23 (Tax 1984), aff'd, o.b. per curiam, 8 N.J.Tax 321 (App.Div.1986), the court recognized that the Director has considerable discretion with regard to the assessment of penalties and interest and the waiver of same, and held that his actions should not be overturned unless they are manifestly arbitrary or unreasonable. Id. at 33. See also Patel v. Director, Div. of Taxation, 13 N.J.Tax 509, 515 (Tax 1993). The Director argues that the dearth of material regarding taxability of hardwood floor refinishing services does not mean that the imposition of a penalty was unreasonable. Moreover, the Director maintains that the services at issue were presumptively taxable, and therefore plaintiffs explanation regarding his failure to pay the tax is unsatisfactory pursuant to N.J.S.A. 54:49-11. The Director argues that the determination regarding penalties and interest was reasonable and should be affirmed by the court.
I am in agreement with the Director’s position. Plaintiffs apparent belief that his services were not taxable was not rooted in the language of the statute or the regulations. Moreover, even if plaintiff did think that the process of hardwood floor refinishing resulted in a capital improvement, he did not obtain a Form ST-8, the Director’s capital improvement certificate, from his customers. The Director’s action was not manifestly unreasonable; therefore, it must be affirmed.
Based on the foregoing, the determination of the Director of the Division of Taxation is affirmed. Judgment will be entered accordingly.

 The sales tax allegedly owed by plaintiff was not assessed on all sales of Best Floors during the period at issue. The sales involved and the assessed tax for each year are as follows:
Year Sales Tax
1987 $ 84,348 $ 5,061
1988 76,148 4,569
1989 154,608 9,276
$315,104 $18,906

 The process of hardwood floor refinishing as described by plaintiff and his witnesses consists of three steps: (1) the floor is sanded down to the bare wood using successively finer grades of sandpaper; (2) the floor is stained if desired by the customer; (3) three coats of clear polyurethane are applied to the floor, which is buffed between coats.

 N.Y.Tax Law § 1105(c)(5), as originally enacted in 1965, imposed sales tax on receipts from the following services:
Maintaining, servicing or repairing real property, property or land, as such terms are defined in the real property tax law, whether the services are performed in or outside of a building, as distinguished from adding to or improving such real property, property or land, by a capital improvement, but excluding services rendered by an individual who is not in a regular trade or business offering his services to the public, and excluding interior cleaning and maintenance services performed on a regular contractual basis for a term of not less than thirty days, other than window cleaning, rodent and pest control and trash removal from buildings.
The statute was amended in 1981 by L. 1981. c. 471, § 2 to add a reference to the definition of capital improvement which was added to § 1101(b) by L. 1981, c. 471, § 1.

 Though the Director does not refer to N.J.S.A. 1:1-1, that statute provides that, ordinarily, undefined terms in New Jersey statutes are to be construed in accordance with their generally accepted meanings.

 In his reply brief, plaintiff states that "[i]t is ridiculous, in our opinion, to find that the $200 replacement of a toilet fixture is a capital improvement and that a $2,000 hardwood floor refinishing job is not a capital improvement." Plaintiff apparently seeks to impose a monetary standard within the definition of what constitutes a capital improvement. There is no foundation for this notion in the statute.

 For example, if the useful life of a newly-installed floor is 50 years, refinishing that floor will not extend its useful life beyond 50 years, but may prevent deterioration which would reduce its useful life. In any event, plaintiff presented no evidence to the court with regard to the useful life of the floors refinished in the transactions at issue.

 Additionally, the Director refers to New York cases which concern whether certain services are exempt from taxation as capital improvements. Specifically, the Director refers to Raised Computer Floors, Inc. v. Chu, 116 A.D.2d 958, 498 N.Y.S.2d 288 (N.Y.App.Div.), app. denied 68 N.Y.2d 606, 506 N.Y.S.2d 1031, 498 N.E.2d 151 (1986), as an example of a case where the court declined to find that an installation of tangible personal property was a capital improvement because it did not become part of the realty and was not intended to be permanently affixed to the realty. Similarly, with regard to leased property, the test seems to be whether the improvements are to remain the property of the landlord at the termination of the lease, and whether the improvements were intended to be permanently affixed. See Merit Oil of New York, Inc. v. New York State Tax Comm'n, 124 A.D.2d 326, 508 N.Y.S.2d 107 (N.Y.App.Div.1986). The Director recognizes that these cases are not especially persuasive because they were decided on the basis of language added to the New York statute in 1981, well after New Jersey adopted its sales tax act.

 The Dictionary of Real Estate Appraisal (3d ed.1993) adds further support to the conclusion that plaintiff's services constitute maintenance or repair. “Maintenance” is defined as "[k]eeping a property in condition to perform its function efficiently ... Maintenance does not extend the useful life of the property or increase its book value." “Repairs” are defined as “[c]urrent expenditures for general upkeep to preserve a property's condition and efficiency; may include renewal of small parts of any property component; does not include replacement, i.e., the renewal of any substantial part of the property or a change in the form or material of the building.” Plaintiff's services fall within both of these definitions.