**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0207-19

LABOSSIERE ASSOCIATES,
INC.,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

INDEPENDENCE HARBOR I
CONDOMINIUM ASSOCIATION,
INC.,

      Defendant-Respondent/
      Cross-Appellant.

_____

      Argued December 1, 2020 – Decided February 12, 2021

      Before Judges Haas, Mawla and Natali.

      On appeal from the Superior Court of New Jersey, Law
      Division, Bergen County, Docket No. L-3881-15.

      James F. Sullivan argued the cause for appellant/cross-
      respondent (Sullivan and Graber, attorneys; James F.
      Sullivan, of counsel and on the briefs; Christine C.
      Ryan, on the briefs).

Paul A. Sandars, III argued the cause for respondent/cross-appellant (Lum, Drasco & Positan LLC, attorneys; Paul A. Sandars, III and Scott E. Reiser, of counsel and on the briefs).

PER CURIAM

After defendant Harbor I Condominium Association, Inc., failed to remit the final $141,206.62 installment payment of a $2,186,366.44 contract it entered with plaintiff LaBossiere Associates, Inc., for design and construction-related services, plaintiff filed claims for breach of contract, unjust enrichment, and attorneys' fees. Defendant contended plaintiff improperly charged it for sales tax on exempt capital improvements and failed to credit it for excess signage expenses. Defendant also argued the project was poorly completed. The court, after a non-jury trial, determined plaintiff was owed a balance of $48,993.24 from the remaining installment after crediting defendant $69,259.98 in sales tax and $22,953.40 for signage costs.

We affirm in part and reverse in part. We affirm that portion of the court's order that reimbursed defendant for excess signage expenses. We reverse the court's order, however, to the extent it credited defendant for the sales tax plaintiff paid, as the court's findings that the costs of the unsegregated products and services provided were exempt capital improvements were not supported by the applicable law or the trial evidence. Finally, we reject defendant's cross-

2

appeal. We remand the matter, however, for the court to recalculate the prejudgment interest award to correspond to the correct contract damages.

## I.

Plaintiff is an interior design firm specializing in high-end residential and commercial projects. Defendant operates and maintains a sixteen-building condominium complex in Edgewater. Defendant sought to renovate and refurbish the common areas in the complex and approached plaintiff after seeing its work on other design projects in New Jersey.

Plaintiff prepared proposals totaling $2,186,366.44 that included new carpets, painting and wall coverings, artwork, mailroom supplies, furniture, signage, elevator refurbishment, and shipping. The proposals aggregated all product cost and labor, with a specific dollar amount for each discrete portion of the project.[1] The signage proposal, however, provided:

> Allowance for signage. Precise locations and quantities are yet to be specified, further review by board members required to determine necessary replacement and/or additions. Price may increase or decrease due to specific selections. All existing exit signs to remain.
>
> Signage: +/- $34,650.80
>
> [(emphasis added).]

---

[1] For example, as to the artwork and elevator refurbishment costs, the proposals itemized the costs and labor as $207,500 and $67,200, respectively.

A-0207-19

Defendant's attorney thereafter drafted a contract that incorporated by reference plaintiff's proposals. The contract specified that the $2,186,366.44 contract price was inclusive of all work, materials, and labor, and that plaintiff was responsible for paying seven percent sales tax on the entire contract amount.

The parties further agreed that the contract and proposals constituted the entire agreement and any inconsistencies between the proposals and the contract would be determined and controlled by the contract terms. Finally, defendant agreed to pay plaintiff in five installments with the last payment of $141,206.62 due "upon satisfactory completion of the renovations and redecoration of the buildings, pursuant to the terms and conditions of the agreement."

Lorna Chen testified at trial. Chen was a building manager and member of defendant's board of directors that approved the project, the owner of two condominiums at defendant's property, and a real estate agent with over thirty years of experience. She stated that the goal of the project was to "enhance the quality of life of our owners because we were sort of run down" and potential buyers were not purchasing units because they could not tolerate the common areas. She further noted that plaintiff completed the project and that they did "a fabulous job."

A-0207-19

She also acknowledged, however, that one of the goals of the project was "to increase the value of the condominium." When asked generally whether there was an increase in the condominiums' value since the renovation, she answered that the unit values increased "[s]ignificantly."

Plaintiff's owner and lead designer, Philip LaBossiere, testified that the goal of the project was "to update the entire property such that real estate values would increase, sales would be faster[,] and the place would generally look better." He stated that near the end of the project, defendant sent plaintiff several punch lists of items that needed to be addressed to satisfactorily finish the project. After completing all of the punch list items, he noted that "[t]here was nothing but compliments and praise for the transformation aesthetically of the buildings and how wonderful everything looked and how the general residents[] . . . saw it as a very positive thing." He further testified that "everyone that hired us was very pleased and I think they were all still in place before we finished the last building[.]" Similarly, plaintiff's counsel read an excerpt from the deposition testimony of Jorge Faerman, defendant's former property manager, who was employed during the time of the project. He confirmed that plaintiff completed all of the punch list items.

5

Joseph DiPadova, plaintiff's wallpaper and painting subcontractor, testified that his company did the work on all sixteen of defendant's buildings and "on the final walk through . . . everything was fine [and] everything was completed." He also confirmed that he "addressed every single punch list item" and that "[e]verything was accepted." He then noted that "[t]he only issue was having access to the doors" to complete touch up painting and that "[i]f the homeowner was there [they] did it, if they weren't [they] didn't do it and [they] were told to just leave some paint there and that the engineering department would take care of it."

With respect to work on the elevators, DiPadova stated he used a special paint, which "was a spray on type of finish." He confirmed that "the material is very expensive" and for removal, "[i]t would have to be sanded down and a bonding primer would have to be applied and then a top coat."

Regarding artwork installed in the common areas, LaBossiere testified that all the canvas-backed artwork was installed with anti-theft hardware, which is "a point system of two pieces of hardware, one that's attached to the back of the frame and one that goes on the wall and there's a special tool that is needed to engage and disengage those two brackets." He noted subcontractors "applied . . . an industrial strength two-sided tape that is stronger than anything that you

could steal, in fact, . . . the wall covering would come with it or the wallboard would come with it." More specifically, he noted that the tape has an adhesive that "hardens and becomes . . . permanent."

Finally, as to the signage expenses, LaBossiere stated that the "plus or minus" provision in the proposal "allow[ed him] the flexibility within [his] responsibility of a contract to be sure all the signs are done properly." On cross-examination, however, LaBossiere was confronted with his deposition testimony in which he admitted that a client would "presumably" be entitled to a credit if he spent less than the stated amount for signage in the proposal. Finally, he acknowledged paying only $11,696.60 for the plastic signs required to complete the project.

James Felekos, the property manager who replaced Faerman, testified on behalf of defendant. He stated that his employment with defendant began after plaintiff's project was "substantially complete" and "in what [he] would call the punch list phase." When asked about the wallpaper and repainting work, he testified that it "would extend the useful life of any of those items; the walls, the metal doors, elevator cab doors, [and] flooring." Felekos admitted he had personal knowledge of only "some" of the doors that needed to be repaired. He

7

also admitted that he did not "recall the specifics" of plaintiff's completion of the punch list items.

With respect to plaintiff's payment of sales tax, LaBossiere emphasized that he was "obligated to pay the State of New Jersey on selling items that are taxable" and he "studied that exemption very carefully and nothing applied" in this case. He stated that "there was nothing under what we sold them that was not taxable" so he "charged . . . New Jersey sales tax on everything we sold them and then we paid the State of New Jersey on everything we sold them." He testified that neither the flooring subcontractor nor the paint and wallpaper subcontractor collected sales tax from plaintiff because they instead requested an ST-3 form.[2]

LaBossiere testified that the sales tax charged "must have included labor" since it applied to the entire contact price. He also noted that he never received an ST-8 (Certificate for Capital Improvement) form from defendant for the

_____

[2] "In a sale-for-resale transaction, the purchaser, pursuant to N.J.A.C. 18:24-10.2, provides the vendor a resale or exemption certificate, or ST-3 form, and the vendor accepts the certificate in lieu of collecting the sales or use tax." Boardwalk Regency Corp. v. Dir., Div. of Tax'n, 17 N.J. Tax 331, 349 (Tax 1998), rev'd on other grounds, 18 N.J. Tax 328 (App. Div. 1999).

project.[3]  Plaintiff's bookkeeper confirmed LaBossiere's testimony and stated that payments for taxes "were made with every payment that was received [by plaintiff]" and acknowledged that as plaintiff "received money from [defendant, she] would pay the sales tax of [seven percent] on that."

In a June 12, 2019 order, the court entered judgment in favor of plaintiff in the amount of $48,993.24, and judgment in favor of defendant in the amount of $92,213.38.  In its accompanying statement of reasons, the court determined that "the contract lists the sales tax as $143,033.32[,] clearly contrary to law, as it represents a calculation based on the lump sum contract price of $2,043,333.12."

Citing H.J. Bradley Inc. v. Director, Division of Taxation, 4 N.J. Tax 213 (Tax 1982), the court stated "[w]here a contractor installs property that becomes part of real property, the contractor is not to collect sales tax from the customer but must obtain from the customer a completed Certificate of Capital Improvement for permanent retention."  The court held that "apart from the carpet, which is specifically excluded by [N.J.S.A. 54:32B-3(b)(2)(v)], the

---

[3]  A ST-8 Form is used "[w]hen the use of materials and supplies by a contractor results in a capital improvement" and acts to "relieve[] the customer of responsibility for payment of tax on the services performed by the contractor in installing the materials."  Elbert Lively & Co. v. Dir., Div. of Tax'n, 5 N.J. Tax 431, 439-40 (Tax 1983) (citing N.J.S.A. 54:32B-3(b)(2)(v)).

chattels became fixtures because they were actually annexed to the real estate, applied to the use and purpose of the real estate[,] and were annexed with the intention that they become a permanent accession to the property."

In support of its findings that some of plaintiff's work constituted non-taxable capital improvements, the court emphasized that Chen "testified since the renovation the units had increased in price" and "the renovation increased the property's value." The court noted "wall coverings are not included" as a taxable service and concluded "since . . . the wallpaper [was] a capital improvement, neither the materials nor the labor [were] subject to tax." The court relied on an invoice[4] from DiPadova and estimated the cost of wallpaper at $401,800. Based on this figure, the court calculated that plaintiff improperly charged a seven percent sales tax of $28,126.

It also found that the "application of paint, but not the paint" itself was taxable and that the paint charges in the invoices[5] do not include labor. The court surmised that since plaintiff's proposal listed "Paint and Wall Covering" at $955,557.50, and as it already concluded the cost of wallpaper was $401,800,

---

[4] The referenced invoice entitled "paint and wallcovering" includes a description of paint services within its estimate cost of wallcoverings for fourteen buildings in the complex.

[5] The parties have not included these referenced invoices in the record.

then the cost of painting must have been $306,242.50.[6] After applying a seven percent sales tax, the court calculated that plaintiff improperly charged $21,463.98 to defendant for paint.

The court next determined that the "refurbishing of the elevator cabs and painting of the elevator doors and frames with specialty paint [did] not . . . constitute [taxable] 'interior' painting, but capital improvement based upon [DiPadova's] testimony [about] the specialty paint used to refurbish the cabs[.]" The court noted plaintiff's proposal listed the price for the elevators at $67,200, "which d[id] not include the $6[]300 for painting the exterior." After adding the total price of the elevator refurbishment, the court calculated that plaintiff improperly charged a seven percent sales tax of $5145 on these services.

Finally, the court noted the artwork was "affixed . . . to the walls in a manner such that its removal would cause damage to the walls" and determined that "the artwork constituted a capital improvement." After noting plaintiff charged defendant $207,500 for the artwork based on its proposal, it calculated that defendant was improperly charged a seven percent sales tax in the amount of $14,525 for the artwork.

---

[6] It is unclear from the record how the court derived the $306,242.50 figure, as deducting $401,800 from $955,557.50 equals $553,757.50.

The court noted that plaintiff "was responsible for both obtaining the ST-8 [form] from [defendant] and payment for any sales tax due and owing" and that he "had the responsibility of obtaining from his suppliers/subcontractors invoices which correctly break down the services from the materials as the services are taxable and the materials are not." It noted that plaintiff "may thereafter pursue such remedies as he may have with the State of New Jersey."

Finally, the court rejected defendant's "belated claims of poor workmanship, poor quality artwork, misplacement of furniture, undersized dirt-trapping mats, etc., which [were] belied by the relatively minor character of punch list items . . . in terms of the sheer volume of the work, and satisfaction with the overall outcome" by Chen. With respect to signage, the court noted that the credit of $22,953.40 was "based upon plaintiff's deposition testimony wherein he testified the allowance would appear to warrant a credit to defendants if the signage cost were less than the allowance and his trial testimony." The court also found no enforceable agreement for defendant to pay plaintiff's legal fees.

Plaintiff submitted a letter objecting to the June 12, 2019 order as granting defendant "double recovery" on the sales tax deductions, and the court amended the order on June 19, 2019, so that judgment was only granted in favor of

12

plaintiff in the amount of $48,993.24. Both parties moved for reconsideration, which the court denied in an August 12, 2019 order. The court, however, granted plaintiff's request for prejudgment interest from the filing date of its complaint. This appeal followed.

On appeal, plaintiff first claims the trial court erred by concluding it was not required to pay sales tax on the entire contract. Second, it maintains the trial court erred by "rewriting" the lump sum contract to include an allowance for unused signage costs. In its cross-appeal, defendant argues the trial court erred by: 1) failing to credit it fully with regard to improperly charged sales taxes on plaintiff's services, including signage and shipping; 2) rejecting its claims of poor workmanship; and 3) awarding plaintiff prejudgment interest. We address each of the parties' arguments seriatim.[7]

II.

In its first point, plaintiff contends the court improperly found that portions of the redesign and refurbishment work of defendant's common areas were capital improvements. Specifically, plaintiff argues the evidence adduced

_____

[7] Plaintiff has not specifically addressed the court's rejection of its claim for attorneys' fees. As it failed to brief this issue, it is deemed waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (citations omitted).

13

at trial failed to support the conclusion that the project resulted in an "increase in the capital value [or] in a significant increase in the useful life of those areas." We agree.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo. State v. Parker, 212 N.J. 269, 278 (2012); Mountain Hill, LLC v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008).

The Sales and Use Tax Act imposes a tax on the "receipts from every sale . . . of" certain services connected with "[i]nstalling tangible personal property" or "[m]aintaining, servicing[,] or repairing real property." N.J.S.A. 54:32B-3(b)(2), (4). Services connected with the installation of tangible personal property, however, are exempt from sales tax if the "property . . . when installed, will constitute an addition or capital improvement to real property, property or land." N.J.S.A. 54:32B-3(b)(2)(v). Similarly, services that maintain, service,

14

or repair real property are exempt from taxation if they "add[] to or improv[e] the real property by a capital improvement." N.J.S.A. 54:32B-3(b)(4). These exemptions, like others, must "be strictly construed against the claimant." Quest Diagnostics, Inc. v. Dir., Div. of Tax'n, 387 N.J. Super. 104, 109 (App. Div. 2006).

The determination of whether a service is a capital improvement hinges on whether it "results in an increase in the value of the real property or a significant increase in the useful life of such property." N.J.A.C. 18:24-5.16(a)(6)(i); see also N.J.A.C. 18:24-4.6(a)(2)(i), (ii). Examples of services on real property that are not tax exempt include "[r]epainting the interior or exterior of a building," "[p]atching a roof," and "[p]ower-washing a building." N.J.A.C. 18:24-5.8. The party seeking the tax exemption bears the burden of proving that the service is a capital improvement. Newman v. Dir., Div. of Tax'n, 14 N.J. Tax 313, 318, 329 (Tax 1994). This comports with the mandate that tax "exemptions are to be construed narrowly." Amerada Hess Corp. v. Div. of Tax'n, 107 N.J. 307, 319-20 (1987) (quoting Fedders Fin. Corp. v. Div. of Tax'n, 96 N.J. 376, 386 (1984)).

In Newman, the Tax Court addressed whether refurbishing hardwood floors was considered a capital improvement. 14 N.J. Tax at 314-15. The

taxpayer contended that this activity was not subject to sales tax because it resulted in a capital improvement of the property. Ibid. The court determined refurbishment of the floor was a taxable service because it was done "precisely to maintain, service[,] or repair . . . by restoring it to a previous condition and removing surface imperfections from the wood," and the renewal of the finish, making the appearance of the floor "almost as good as that of a new floor . . . is obviously maintenance, service or repair." Id. at 323. The Newman court concluded that refinishing work did not constitute a capital improvement. Id. at 330.

The taxpayer in Newman asserted that refurbishing "extends the life of the floor" and has the dispositive characteristics found only in capital improvements. Id. at 325-26. The Tax Court rejected this argument, concluding that a capital improvement must either increase the value of the property or extend its useful life and refinishing did neither. Id. at 329-30. Specifically, the court concluded "refinishing does not increase the useful life of the floor, but rather prevents a decrease in that useful life." Id. at 327; see also H.J. Bradley, Inc., 4 N.J. Tax at 228 (holding the taxpayers installation of an above-ground swimming pool was not a capital improvement because there was no evidence it

"resulted in an increase in the capital value of the real property or resulted in a significant increase in the useful life of the real property").

With respect to whether the contractor or customer is responsible for paying sales tax, New Jersey tax regulations, provide:

> (a) Services rendered by a contractor in maintaining, servicing, or repairing real property, except as hereinafter provided, are subject to tax. When charging the tax on maintaining, servicing, and repairing real property, a contractor must charge the sales tax on only that portion of his or her bill attributable to services. The tax on materials used in performance of such services is the responsibility of the contractor.
>
> . . . .
>
> (c) In all instances, sales or use taxes on materials used in maintaining, servicing, or repairing real property where such materials are provided by the contractor as part of his or her services, are the responsibility of the contractor rather than of the contractor's customer. The contractor should charge tax only on the separately stated service portion of his or her bill.
>
> [N.J.A.C. 18:24-5.8.]

In Tozour Energy Systems Inc. v. Director, Division of Taxation, the taxpayer performed maintenance and repair work on commercial heating and cooling systems but failed to itemize services and materials used in its contracts with customers. 23 N.J. Tax 341, 343-44 (Tax 2007). The taxpayer charged its customers sales tax on the entire comingled contract but did not pay tax on its

17

use of the materials. Id. at 344. In finding the taxpayer liable, the Tax Court acknowledged "the difficulty [under certain situations] in separating the price of the service contract into components for labor and parts . . . ." Id. at 354. As a consequence, the court noted the Division of Taxation has advised taxpayers that "if a contractor does not itemize the materials and labor for a taxable job, the entire receipt is subject to tax." Ibid. (citing Division of Taxation, Tax Topic: Contractors and New Jersey Taxes (rev. Oct. 2016) ("S&U-3")); see also Division of Taxation, Tax Topic: Sales Tax and Home Improvements (rev. Sept. 2017) ("S&U-2").[8]

Here, the trial court improperly applied a test for when a chattel becomes a fixture in determining plaintiff's tax liability. As noted, the test for whether services are a tax-exempt capital improvement project requires analyzing whether the work "results in an increase in the value of the real property or a significant increase in the useful life of such property," not affixation. N.J.A.C. 18:24-5.16(a)(6)(i).

---

[8] These publications are regularly updated and revised. Plaintiff refers to the September 2017 version of these bulletins. A copy of the March 2007 S&U-2 contains identical language as the language we rely on. Therefore, reliance on the updated bulletins does not affect our analysis.

In determining that the wallpaper, elevator refurbishment, and artwork services provided by plaintiff were capital improvements, the court relied, in part, on Chen's testimony that one of the reasons for defendant hiring plaintiff was "to increase the value of the condominium" and that the value of the condominiums increased "[s]ignificantly" after plaintiff completed the project. In that regard, the court emphasized that she was an experienced real estate agent, a member of defendant's board at the time of the project and owned two units in the property. While we typically defer to a trial court's factual findings when they are supported by adequate, substantial, credible evidence, especially when that evidence "is largely testimonial and involves questions of credibility," Seidman, 205 N.J. at 169 (quoting Cesare, 154 N.J. at 411-12), Chen's testimony failed to meet this standard. Indeed, it amounted to bare and conclusory assertions that were untethered to the precise work in the common areas specifically. By way of example only, Chen's testimony failed to address that a large portion of plaintiff's work involved painting and $710,154.62 in carpeting, which indisputably do not qualify as capital improvements. Further, and as defendant concedes in its merits brief, the court "did not hear any testimony from . . . Chen or any other witness as to the amount by which the project

A-0207-19

increased property values" and "no expert was proffered to opine as to the value of the improvement."

Defendant provided no other proof to demonstrate the increase in value to the property as a result of plaintiff's specific services in the common areas or that such an increase in value was not attributable to market factors outside of the restoration project. Accordingly, Chen's testimony was insufficient to justify the court's finding that a majority of plaintiff's services were capital improvements. See L & L Oil Serv., Inc. v. Dir., N.J. Div. of Tax'n, 18 N.J. Tax 514, 532 (Tax 2000) (finding that the plaintiff failed to show that its services were a capital improvement as it "presented no proof that its services enhanced the value of the real property").

Nor were the court's other reasons sufficient support to justify that the wallpaper, elevator refurbishment, and artwork services provided by plaintiff were tax-exempt capital improvements. The court's findings are either unsupported by adequate, substantial, and credible evidence in the record or contrary to the applicable tax law on capital improvements.

First, the court found the materials and labor for the wallpaper were capital improvements and not subject to tax. The court nonetheless failed to elaborate on its reasoning as to why wallpaper is sufficiently different from interior

20

painting, which is not considered a capital improvement. See N.J.A.C. 18:24-5.8(a)(5). In this regard, Felekos, the building's property manager who took over after Faerman and whose testimony the court found was "of limited value," merely testified that wallpaper "would extend the useful life of . . . the walls." Such reasoning underlying this conclusory testimony would render any maintenance, service, or repair on a wall surface a capital improvement. Like in Newman, wallpaper does not "increase the useful life of the [walls], but rather prevents a decrease in that useful life." 14 N.J. Tax at 327 (emphasis removed).

The court similarly erred when it determined the elevator refurbishment was a capital improvement. We conclude plaintiff's refurbishing of the elevators is sufficiently analogous to the floor refinishing service provided by the plaintiff in Newman. According to the court's own description of plaintiff's work, the contract included "[m]etal restoration" and "[s]eal[ing] all brass with several coats of acrylic lacquer, clean[ing] all bronze doors, cleaning all call buttons[,] cleaning all thresholds[,] replac[ing] of elevator mirrors . . . , [s]upply[ing] and install[ing of] brass handrails . . . , [and] remov[ing] old elevator wall coverings and replac[ing them] with new laminate." The type of paint used on the exterior doors had no bearing on the fact that restoring the elevators as a whole "to a previous condition and removing surface imperfections" was "obviously

21

maintenance, service or repair" and subject to sales tax.  <u>Newman</u>, 14 N.J. Tax at 330.

Third, the court improperly determined that the artwork constituted a capital improvement.  In making this finding, the court relied on LaBossiere's own testimony that the two-sided tape used for the artwork was strong enough that "the wall covering . . . or the wallboard would come with it" if removed and, as a result, those pieces were essentially "permanent."  Proving affixation alone, however, is insufficient to demonstrate that any particular maintenance, service, or repair of real property is necessarily a capital improvement.  As noted, there must be sufficient evidence in the record that the installation increased the value of, or extended the useful life of, the real property.  <u>See</u> N.J.A.C. 18:24-5.16(a)(6)(i).  As in <u>Newman</u>, regardless of the perceived permanency of affixing some artwork to the walls, there is a lack of credible evidence in the record to support the court's finding that they constituted capital improvements either because they increased the value of the property or extended its useful life.

Similarly, defendant is not entitled to credit for tax on the paint or painting.  While plaintiff is responsible for paying to the Division of Taxation the tax on materials it uses in its services as a contractor, N.J.A.C. 18:24-5.8,

22

the parties' contract clearly indicated that defendant would pay the cost of those taxes to plaintiff, which it did by paying the first four installments without objection. Further, the record before us is devoid of how much was spent on the materials for paint. We do not address the trial court's mathematical errors in calculating the sales tax on this portion of the project because granting any tax credit would be entirely speculative and unsupported by adequate, substantial, and credible evidence in the record. As noted, neither the contract nor proposals separated the material and labor, and defendant is therefore responsible for sales tax on the total amount of the bill if the charges for labor and materials are not distinctly separated. Tozour Energy Sys., 23 N.J. Tax at 354.

Defendant relies on Polaris Corporation v. Director, Division of Taxation, 12 N.J. Tax 70, 72 (Tax 1991), for the proposition that sales tax a contractor pays on materials "cannot be passed on to [defendant] as a resale customer." This reliance, however, is misplaced as the contractor in Polaris "paid no sales tax on its purchase of the raw materials in question, nor did it charge its . . . customers for sales or use tax." Id. at 72. The Tax Court in Polaris only decided the contractor's tax liability and made no decision on whether a contractor can pass on the tax for materials used in a project. Indeed, regulations from the Division of Taxation on a contractor's services to real property state a

A-0207-19

"contractor is not required to pay tax on materials at the time of purchase" as long as it issues an ST-3 form, which plaintiff appropriately did. N.J.A.C. 18:24-5.9(b).

III.

In its second point, plaintiff argues that the court improperly "relied on deposition testimony about the signage allowance rather than the contract itself to award a credit for signage." As a result, plaintiff maintains defendant is obligated to pay the full contract price without credit for a signage allowance. We disagree.

The construction of a contract is a question of law. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011) (citing Jennings v. Pinto, 5 N.J. 562, 569-70 (1950)). Consequently, we review the trial court's interpretation of a contract de novo. Id. at 222 (citing Jennings, 5 N.J. at 569-70).

The language of a contract, by itself, must determine the agreement's force and effect if it is "plain and capable of legal construction." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (citation omitted). However, "[e]ven in the interpretation of an unambiguous contract, [the court] may consider 'all of the relevant evidence that will assist in determining [its] intent and meaning.'" Ibid. (alteration in original) (quoting Conway v. 287 Corp. Ctr.

Assocs., 187 N.J. 259, 269 (2006)). Our Supreme Court has adopted an expansive view of the parol evidence rule that permits consideration of "all of the relevant evidence that will assist in determining the intent and meaning of the contract." Conway, 187 N.J. at 269.

"In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document." Id. at 268 (citation omitted). However, as we have made clear:

> [T]he parol evidence rule applies only to prevent the substantive alteration of contractual terms agreed upon by parties and expressed in an integration of their bargain, by resort to other prior or contemporaneous agreements or understandings. But the parol evidence rule does not even come into play until it is first determined what the true agreement of the parties is — i.e., what they meant by what they wrote down. Only when that is determined is one in an appropriate position to raise the bar of the parol evidence rule to prevent alteration or impugnment of the agreement by the asserted contradictory prior or contemporaneous agreement.
>
> [Garden State Plaza Corp. v. S.S. Kresge Co., 78 N.J. Super. 485, 496 (App. Div. 1963).]

Here, there was sufficient evidence to support the court's finding that defendant was entitled to a $22,953.40 credit for the signage costs. First, the contract incorporated the signage proposal by way of the integration clause in paragraph one. Unlike the estimates for carpeting, wall coverings, artwork, and

the elevator refurbishment, the amount of compensable signage was not clearly established, as evidenced by the parties use of the "+/-" symbol. Further, in LaBossiere's deposition testimony, he stated that defendant was "presumably" entitled to a credit if less than $34,650.80 was spent on signage. The court was clearly permitted to consider that evidence to "assist in determining the intent and meaning of the contract." Conway, 187 N.J. at 269. Accordingly, after considering the intent of the parties and the language in the signage clause, the trial court did not err in granting defendant such an allowance.

IV.

In its cross-appeal, defendant first maintains that "the trial court erred in its calculation of the actual amount due" under the sales tax credit for paint and wallpaper and that it is entitled to credit for the sales tax on the signage and shipping services plaintiff provided. In defendant's second point, it asserts the trial court erred when it failed to issue credits for plaintiff's "poor workmanship." We disagree with these arguments.

In light of our conclusion that the wallpaper and paint services provided were not capital improvements, we find no merit in defendant's contention for further credit on the sales tax. We also find the trial court correctly concluded that defendant is not entitled to a credit on the sales tax it paid for the signage

26

because defendant failed to introduce any evidence that the signs either increased the value of the property or extended its useful life.

Similarly, we also disagree that defendant is entitled to a credit on the sales tax it paid for shipping because, as we have discussed, all the items plaintiff shipped were subject to the sales tax. See Division of Taxation, Out of State Sales & New Jersey Sales Tax (rev. Mar. 2009) ("ANJ-10") ("Charges for the delivery of property (or services) from a seller directly to a customer are subject to [s]ales [t]ax if the items sold are subject to tax . . . ."). Finally, we find no reason to disturb the trial court's rejection of defendant's claims of poor workmanship because the court's finding that defendant's contentions were "belied by the relatively minor character of punch list items . . . in terms of the sheer volume of the work, and [defendant's] satisfaction with the overall outcome" was amply supported by the record. See Seidman, 205 N.J. at 169.

V.

In its final point, defendant maintains that plaintiff owes it $7776.24, upon consideration of all its alleged credits. It also argues plaintiff is not entitled to prejudgment interest. We disagree that defendant is entitled to any award for the reasons we have already determined but remand for the trial court to amend plaintiff's prejudgment interest to accurately reflect plaintiff's damages.

27

"[T]he award of prejudgment interest on contract and equitable claims is based on equitable principles." Cnty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006). The trial court, accordingly, has sole discretion in deciding whether and how to award prejudgment interest, which we will not disturb unless it "represents a manifest denial of justice." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 390 (2009) (quoting Cnty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006)).

In awarding prejudgment interest, the court's principal attention focuses on whether:

> [T]he defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.
>
> [Rova Farms Resort, Inc. v. Invs. Ins., 65 N.J. 474, 506 (1974).]

Here, as noted, since we do not find that defendant is entitled to any additional credits, we find no reason to disturb the trial court's discretionary determination that plaintiff is entitled to prejudgment interest. On remand, however, the court should amend plaintiff's judgment to reflect the correct amount of damages.

A-0207-19

To the extent we have not addressed any party's remaining arguments it is because we have determined that they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0207-19